MINKER v. PENNSYLVANIA R. CO. et al.

Civil Action No. 4783.

District Court, E. D. Pennsylvania.

Nov. 29, 1945.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

Philip Price and Benjamin O. Frick and Rodney T. Bonsall, of Evans, Bayard &

Frick, all of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

The plaintiff brought this suit under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., against the Pennsylvania Railroad Co., Chesapeake & Ohio Railroad Co., Southern Railway Co., and Richmond, Fredericksburg & Potomac Railroad Co., "individually and trading as Potomac Yard."

The Pennsylvania was validly served. The R. F. & P. was not served. The C. & O. was served by delivering the summons to the General Agent in charge of its freight office in Philadelphia, and the Southern was served by delivering the summons to the Assistant General Passenger Agent in charge of its passenger agency in Philadelphia. The C. & O. and the Southern have moved to quash the service of the summons on the ground that they are not doing business in this district.

Neither of these last two defendants have tracks within this district but both maintain offices in Philadelphia with a number of employees. All expenses, including the salaries of these employees, are paid by checks drawn on banks outside Pennsylvania. Neither company maintains a bank account within the district. The employees solicit freight and passenger traffic, trace shipments for shippers, and furnish information concerning facilities and rates to prospective shippers. In the case of the C. & O. two of its employees are traveling representatives who use their own automobiles, and the C. & O. carries public liability insurance on such automobiles.

If the two companies' only activities here were those above described, they would not be doing business within this district. Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, has never been overruled although it is rarely cited without repeating the Supreme Court's comment in International Harvester Co. v. Kentucky, 234 U.S. 579, 586, 34 S.Ct. 944, 58 L.Ed. 1479, that it was an extreme case, and it has been criticized (by Rutledge, J., in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926) and its authority doubted (L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139). It may be that the trend of the law is away from it, but as the law now stands I would have to follow it, were it applicable.

There is, however, an important feature presented by this case which, the plaintiff contends, takes it out of the rule of the Green case and, taken in connection with their other activities in Philadelphia, makes these two defendants subject to process in this district. It appears from evidence submitted by stipulation of counsel in connection with this motion that a certain freight yard and track facilities near Alexandria, Virginia, and known as Potomac Yard, is maintained, operated and used in common, under an agreement to which the four railroads, defendants in this case, together with the Baltimore & Ohio are parties. What is the effect of this arrangement upon the contention of the defendants that they are not doing business here?

The defendants would have to agree, I should think, that, if they operated all or any considerable parts of their systems in common for their mutual benefit, they would be doing business here if any one of them maintained an office and customarily made contracts in Philadelphia to transport freight or passengers over the parts of the systems so jointly operated. To make it concrete, if, for example, the Baltimore & Ohio and the C. & O. pooled their operations between Washington and Cincinnati on a basis of pro rata division of expenses, with joint management and joint control of facilities, employees and train movements, the C. & O. as well as the Baltimore & Ohio would be doing business here when the latter sold transportation at its Philadelphia office over the jointly operated portion of the systems. An examination of what is done at Potomac Yard shows that the operation there differs from the illustration in extent but not in principle.

Unquestionably, the business of transportation is being carried on in Potomac Yard. And after a very careful reading of the contract between these defendants, I find it impossible to reach any conclusion other than that it is being carried on by the defendants jointly and for their joint benefit.

The use, in the agreement, of language appropriate to a landlord and tenant relationship and the repeated assertion that the railroads are contracting "severally" do

not change the fact that the operation is a joint one. Trains, locomotives and cars in the yard are operated by employees of all the defendants and the wages of the employees so engaged are paid by all the defendants pro rata, the portion contributed by each being based on the amount of its freight traffic handled. Operations within the yard limits are subject to rules and regulations prescribed by the Richmond Company, the owner of the tracks, with, however, the approval of a Board of Managers consisting of five members, one appointed by each of the five railroads. Yard operations are directed by an officer called Superintendent of Potomac Yard who reports to the Board and who is appointed by the Richmond Company, subject to the approval of the Board and removable by it. Maintenance of equipment is under an officer called Master Mechanic of Potomac Yard who works under the Superintendent. The contract provides that "the Potomac Yard organization" shall maintain and operate certain adjacent industrial tracks of the Richmond Company if desired. Any employee below the rank of train master of any of the parties to the agreement may be removed from the service in the yard upon motion of the Superintendent on complaint to the Superintendent subject to review and confirmation or reversal by the Board of Managers. Such removal, it will be noted, eliminates the employee from the Potomac Yard organization, but in no way affects his status as an employee of his own company. The agreement and particularly the plan of accounting is extremely complex but it seems clear that Potomac Yard is treated as an entity, not only for accounting purposes but as regards management as well.

The mutual advantage of the operation is obvious. Instead of constructing separate yards the railroads are enabled to use a single group of facilities already in existence at a cost, a mere fraction of what it otherwise would have been. Though there are no profits in the sense of a fund to be shared arising from operations, pecuniary benefits are reflected in the operating balances of the individual railroads and these benefits vary with the operation of the joint enterprises. For example, the expenses chargeable against any one railroad decrease as the volume of the freight handled by the others increases, and vice versa. The absence of an actual fund constituting profits may prevent the relation-

ship from being a partnership in the legal sense, but it does not change the fact that the roads are associated for mutual benefit in a business or enterprise operated by all of them.

Whether or not the association of these railroads with one another in operating Potomac Yard creates a partnership between them is of no particular importance. The controlling question is whether the relationship is such that any one of the associated companies is an agent of the others in making contracts for the transportation of goods through Potomac Yard.

Admittedly the Pennsylvania has an office in Philadelphia where it contracts for the transportation of freight over the tracks included in the Potomac Yard area. In doing so, it does more than merely arrange for carriage of freight to its destination over the line of a connecting or terminal carrier—a transaction which would not constitute doing business in this district by the connecting or terminal carrier. Potomac Yard is not merely a line of junction between the tracks of two carriers. It extends for a distance of over five miles between Washington and Alexandia and has many more miles of track, over which cars or trains of the associated carriers move in commerce.

When the Pennsylvania contracts for the transportation of freight through Potomac Yard, it acts as an agent for each of the other roads, not generally of course, but for that part of their business which they carry on together at the Yard. If the defendants who have made this motion had resident agents or employees in this state selling tickets, issuing bills of lading and contracting for the transportation of goods over any part of their lines, they could not contend that they were not doing business here. The facts that the resident agent in this case is a corporation rather than an individual and that the part of the line over which the transportation takes place is jointly operated do not alter the situation.

The maintenance of offices by the C. & O. and the Southern for the solicitation of business, the tracing of shipments and the supplying of information to purchasers of its transportation, plus the actual sale of such transportation through the limits of Potomac Yard, even though such sale is not made by the same agents who do the other things nor made from the same office but made by another railroad, carry this

1020

case beyond the Green case, the rule in which case "readily yields to slight additions." Barnett v. Texas & Pacific Railway Co., 2 Cir., 145 F.2d 800, 804. Under the circumstances as set forth above, service on the Assistant General Passenger Agent of the Southern and on the General Agent of the C. & O., the agents in charge of the respective offices of these companies in Philadelphia, was a service on the proper officer of a corporation doing business in this district and is valid.

It is not intended to pass upon the question of whether a railroad such, for example, as the R. F. & P., which maintains no office here for any purpose and has no employee of its own in the district, so far as the Court is aware, can be subjected to process by service upon the Pennsylvania as its agent, solely because of its association with the Pennsylvania in the Potomac Yard enterprise.

The motions are denied.