## MOORE v. ATLANTIC COAST LINE R. CO. et al.

### Civ. A. No. 9190.

United States District Court
E. D. Pennsylvania.
June 26, 1951.

Freedman, Landry & Lorry and Joseph Weiner, Philadelphia, Pa., for plaintiff.

H. Francis DeLone, Philadelphia, Pa., for defendants.

GRIM, District Judge.

Plaintiff, Charles Moore, a citizen and resident of Philadelphia, Pennsylvania, has brought this suit for $25,000 damages, alleging that he was "assaulted, battered, falsely imprisoned, deprived of his civil liberties, humiliated, vilified and shamed and he sustained a severe mental and nervous shock" as a result of actions of employees of defendants, Atlantic Coast Line Railroad Company, a Virginia corporation, and the Pennsylvania Railroad Company, a Pennsylvania corporation.

Plaintiff, a Negro, avers the following facts: On September 26, 1947, he purchased from defendants a round-trip coach passenger ticket from Philadelphia, Pennsylvania, to Savannah, Georgia, and return. At 3:18 P.M. on that same day he boarded Train No. 105 on which he travelled from Philadelphia to Florence, South Carolina, occupying Seat No. 42, the reserved seat assigned to him, in Car CH9, which was owned by the Pennsylvania Railroad. The next morning at about 1:00 o'clock in Florence, South Carolina, defendants' employees obtained the services of four police officers who, with defendants' conductor, woke the plaintiff, swore at him, threatened him with physical harm and with imprisonment in jail, placed him under arrest, physically evicted him from Car CH9, which was restricted to white passengers, and forced him into Car CH3 in the same train, which car was restricted to Negroes and owned by Atlantic Coast Line.

Plaintiff asserts two causes of action, one a common law or diversity cause of action for assault, battery, false imprisonment and humiliation, and the other a federal cause of action for "violation of the Constitution and laws of the United States and of the regulations of the Interstate Commerce Commission."

Defendant Atlantic Coast Line has filed a motion to dismiss this suit on three grounds: (1) that, not being subject to service in this District, Atlantic Coast Line was not properly served with process; (2) that venue is improperly laid in this District as to Atlantic Coast Line; and (3) that exclusive primary jurisdiction of the subject matter of this action lies with the Interstate Commerce Commission.

Defendant Pennsylvania Railroad has filed a motion to dismiss this suit on two grounds: (1) that as to plaintiff's common

law action for assault, battery, false imprisonment and humiliation against Pennsylvania Railroad, there is no diversity of citizenship between them; and (2) that plaintiff's federal action for violation of his constitutional and statutory rights must be dismissed because exclusive primary jurisdiction of this subject matter lies with the Interstate Commerce Commission.

The principal question presented in the case is whether Atlantic Coast Line has been properly served with process so as to be subject to the jurisdiction of this court. Atlantic Coast Line contends that it is not subject to service in the Eastern District of Pennsylvania because it is not "doing business" here. Following are the uncontroverted facts relating to Atlantic Coast Line's activities in this district.

The Atlantic Coast Line Railraod Company (hereinafter sometimes referred to as the defendant) is an interstate railroad incorporated under the laws of Virginia, with its principal office in Wilmington, North Carolina. Defendant's northern terminal is Richmond, Virginia; none of its tracks extends into Pennsylvania; and it has never operated any railroad line, station, terminal, yard, shop or other transportation facility in Pennsylvania. It maintains two offices in Philadelphia, one for the solicitation of passenger business and the other for the solicitation of freight business. Defendant's name appears on the doors of these offices and in local telephone directories. The offices are leased in the defendant's name, the leases having been executed by the defendant at Wilmington, North Carolina, and the office furniture in each of the offices belongs to the defendant. It maintains no local bank account, salaries of its Philadelphia employees are paid by checks from its general office at Wilmington, North Carolina, drawn on North Carolina banks, and office supplies are furnished to the Philadelphia offices from Wilmington, North Carolina.

In the passenger office, the Division Passenger Agent, with the help of a Traveling Passenger Agent and a Clerk-Stenographer, solicits passenger traffic throughout eastern Pennsylvania, Delaware, and southern New Jersey. He contacts people interested in making trips to the south and furnishes information about schedules and costs, in an attempt to induce them to travel over defendant's lines. The passenger office will, if a prospective passenger so desires, secure tickets for the passenger from the local ticket office of the railroad on whose lines the travel is to originate, usually The Pennsylvania Railroad Company. Tickets so obtained are usually obtained on credit extended by the railroad issuing the tickets and, within seventy-two hours from the time the tickets are obtained, the credit extention slips issued in the name of the prospective passenger are redeemed with cash supplied by the passenger to defendant's passenger solicitation office and by it turned over to the ticket office of the railroad issuing the tickets. No tickets are made up or sold by defendant's local passenger office. During the year 1947, which is the year in which the alleged assault occurred, approximately 3,000 passengers obtained tickets through defendant's local passenger office in the manner above indicated. There is nothing to indicate that 1947 was not an average business year for the railroad. If complaints are made by passengers residing in this district (or Delaware and southern New Jersey), the main office notifies the Philadelphia office. An employee of the Philadelphia office then calls on the complaining parties, obtains all the facts possible, and attempts to pacify them or to show them where they have been wrong in making complaints. Adjustments, if any, are not handled through the local office.

In the freight office, the office manager, with the assistance of a Chief Clerk, a Freight Service Agent, and a Stenographer, solicits freight for handling over the defendant's lines. Both outbound and inbound freight are solicited through the giving of such information as will induce shippers to patronize defendant's lines. The freight office handles no cash, waybills, or bills of lading, although in the course of a year it does trace several hundred lost or delayed freight shipments by telephone or wire inquiries to offices of the

defendant located on its lines south of Richmond, Virginia.

Defendant has not registered to do business in Pennsylvania and has no agent designated to receive service of process here.

Defendant does not operate any trains in this state, although passenger cars and freight cars owned by it travel over the lines of railroads located within Pennsylvania as part of the trains of such railroads, and it is compensated for such use of its cars on a mileage rental basis. Some of the defendant's dining and tavern cars on some through trains operating between Florida and New York are similarily leased to The Pennsylvania Railroad Company while on its lines between New York and Washington. While on The Pennsylvania Railroad Company's lines, the dining and tavern cars are operated as part of The Pennsylvania Railroad's trains, and are in the charge of Pennsylvania Railroad conductors, engineers and other supervisory personnel. The dining car and tavern car waiters and stewards on such cars are paid by the defendant, which purchases provisions for such cars and retains all receipts for meals and beverages served. As to such cars, The Pennsylvania Railroad Company absorbs costs of icing, watering and fueling. Costs of running repairs, servicing, inspecting, air conditioning and heating such cars are prorated between the various railroads over whose lines they travel. These cars are manned by the same employees for an entire trip in order to provide uninterrupted service to passengers, and they operate at a loss—in other words, the receipts do not equal the wages and costs of supplies. While on The Pennsylvania Railroad Company's lines, the dining and tavern car stewards and waiters are subject to the rules, regulations and orders of The Pennsylvania Railroad Company, which has the right to hire and fire such employees and to exclude from its trains any such employees objectionable to it.

■ Rule 4(d)(7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service of process on a foreign corporation is valid if made in the manner prescribed by the law of the state in which the service is made. Therefore, this case is governed by the procedural requirements for valid service in Pennsylvania.

Service in Pennsylvania upon a foreign corporation in a county other than the county where its registered office or principal place of business is located is prescribed by Pennsylvania Rule of Civil Procedure 2180(a)(2), 12 P.S. Appendix, which is as follows: "Rule 2180.

"(a) Service of process * * * shall be made upon a corporation * * * by handing a true and attested copy thereof * * *

"(2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity * * *."

Since service in the present case was made upon the Freight Service Agent, the "person for the time being in charge of, and only at" Atlantic Coast Line's Philadelphia Freight Office, an "office or usual place of business of the corporation", the requirements of Rule 2180(a)(2) have been literally satisfied.

Defendant contends, however, that Rule 2180(a)(2), relating to service in actions against foreign corporations, must be read "in context" with the Pennsylvania rule relating to the venue of such actions, this being Rule 2179(a)(2), which provides that "a personal action against a corporation or similar entity may be brought in and only in * * * a county where it regularly conducts business." Defendant also argues that this court is bound by the decisions of the Pennsylvania courts under this rule concerning the state venue requirements of "doing business."

■ Of course, where service on foreign corporations is attempted in actions brought in the state courts, service Rule 2180(a)(2) must be read together with venue Rule 2179(a)(2), in the sense that both rules are applicable to such actions. But there is clearly nothing in the language of Pennsylvania Service Rule 2180(a)(2) which compels a federal court, inquiring into the propriety of the manner of service under Rule 4(d)(7) of the Fed-

eral Rules, to refer to the provisions of Pennsylvania Venue Rule 2179(a)(2).[1] Therefore, this court is not bound by the Pennsylvania decisions concerning the state venue requirements of "doing business" (which is identical in meaning with "regularly conducting business"). Specifically, this court is not bound by the holding in the recent case of Law v. Atlantic Coast Line R. Co., 1950, 367 Pa. 170, 79 A.2d 252, involving the identical facts pertaining to Atlantic Coast Line's activities in Philadelphia which are involved in the present case. In that case, the Supreme Court of Pennsylvania held that, under the state law pertaining to venue, Atlantic Coast Line was not "doing business" in Philadelphia County and therefore could not be subjected to suit there.

Under the Due Process Clause of the Fourteenth Amendment, a foreign corporation may not be subjected to suit in this court unless it is "doing business" in this district. The leading federal case dealing with the kind and extent of business activities in which a foreign railroad corporation may engage in a particular district without rendering itself amenable to service of process there is Green v. Chicago, B. & Q. R. Co., 1907, 205 U.S. 530, at pages 532–533, 27 S.Ct. 595, at page 596, 51 L.Ed. 916, in which the following facts are recited; "The eastern point of the defendant's line of railroad was at Chicago, whence its tracks extended westward. * * * the defendant employed Mr. Heller, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various travel-

ing passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival in Chicago, the right to receive from the Chicago, Burlington and Quincy Railroad a ticket over that road. * * * In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant."

On these facts the court held, at pages 533–534 of 205 U.S., at page 596 of 27 S. Ct., 51 L.Ed. 916: "The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it. * * *"

Although the Green case "has not been clearly and expressly repudiated by the Supreme Court, its integrity has been much impaired by the decisions which sustain jurisdiction when very little more than 'mere solicitation' is done."[2] As Judge Kirkpatrick of this court has said, the rule in the Green case "readily yields to slight additions. * * *"[3] Jurisdiction has been

1. But cf. opinion of Judge Goodrich, sitting by special assignment on the Court of Appeals for the First Circuit, in Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, where the Massachusetts service statute referred to contained its own requirement of "doing business."

2. Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 517, 146 A.L.R. 926 (opinion by Justice Rutledge).

3. Minker v. Pennsylvania R. Co., D.C. 1945, 63 F.Supp. 1017, 1019–1020.

regularly sustained in "solicitation plus" cases, that is, cases where foreign railroad corporations have engaged in business activities additional to the "mere solicitation" of interstate business.

The "solicitation plus" rule was applied as early as 1913 in the case of St. Louis Southwestern Ry Co. of Texas v. Alexander, 227 U.S. 218, at page 227, 33 S.Ct. 245, at page 247, 57 L.Ed. 486, where that Court said: "This court has decided each case of this character upon the facts brought before it, and has laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction. * * *"

The Court described the activity which was in addition to, and beyond the scope of, defendant's "mere solicitation" activities, at page 225, of 227 U.S., at page 247 of 33 S. Ct., 57 L.Ed. 486, as follows: "Before the action was commenced the defendant in error had considerable correspondence in regard to the claim with P. H. Coombs, of the New York office, in which the defendant in error stated that the plaintiff in error was the initial carrier, and as such would be held liable for the amount of the damage. Replies were received to all such letters, acknowledging receipt, and showing the attention and investigation which the claim was receiving, and stating that all claims were handled by the general offices at either St. Louis or Tyler, Texas, and that the letters were being sent to the St. Louis office of the Missouri company, and that it was hoped a satisfactory reply from the St. Louis office would be received at an early date. One letter was forwarded to S. C. Johnson * * * general adjuster of all freight claims of the Cotton Belt Route, who replied that he would review the matter and write fully regarding the company's position."

The Court then held, at page 228, of 227 U.S., at page 248, of 33 S.Ct., 57 L.Ed. 486: "Here, then, was an authorized agent attending to this and presumably other matters of a kindred character, undertaking to act for and represent the company, negotiating for it, and in its behalf declining to adjust the claim made against it. In this situation we think this was the transaction of business in behalf of the company by its authorized agent in such manner as to bring it within the district of New York, in which it was sued, and to make it subject to the service of process there." In short, the Court held that the defendant railroad was "doing business" although the only activity in addition to solicitation was correspondence between the local agent and the plaintiff (defendant in error) with respect to plaintiff's claim.

In the present case, Atlantic Coast Line's Philadelphia agents, in addition to their passenger and freight solicitation activities, regularly investigate complaints of passengers residing in this district and also trace several hundred lost or delayed freight shipments in the course of a year. Atlantic Coast Line's tracing of freight shipments and its investigation and handling of complaints (short of making adjustments) as a regular and continuous activity make the present case a much stronger "solicitation plus" case than the Alexander case.

In the present case, if complaints are made by passengers residing in this district, Atlantic Coast Line's main office in Wilmington, North Carolina, notifies the Philadelphia office. "An employee of the Philadelphia office then calls on the complaining parties, obtains all the facts possible, and attempts to pacify them or to show them where they have been wrong in making complaints."[4] Adjustments of complaints are not handled through the local office. It does not appear, nor is it material, whether any complaints are received in the Philadelphia office directly from passengers residing in this district and then handled in the manner described above. Although the Philadelphia agent is not authorized to make cash adjustments, he does have the duty to dispose of complaints by the methods of persuasion. The disposition of complaints by persuasion is quite

---

4. Atlantic Coast Line's Statement in Lieu of Answers to Interrogatories, p. 4.

as important to defendant's operation as is the disposition of complaints by making money settlements.

The Philadelphia office's handling of complaints is an essential business activity which is in addition to, and beyond the scope of, defendant's solicitation activities. This additional activity is not distinguishable in character from the local agent's limited handling of the claim involved in the Alexander case. The instant case, therefore, is controlled by the Alexander case.[5]

The recent trend in a few circuits is that, notwithstanding the holding of the Green case, mere solicitation, without more, constitutes doing business within a district in the jurisdictional sense when the solicitation is a regular, continuous and substantial course of business.[6] However, the Green case still retains some vitality in this district.[7] Both Judge Kirkpatrick and Judge Bard of this court have recently dismissed complaints on the authority of the Green case. Murray v. Great Northern Ry. Co., D.C.E.D.Pa.1946, 67 F.Supp. 944; Fiorella v. Baltimore & O. R. Co., D.C.E.D.Pa. 1950, 89 F.Supp. 850. However, the additional activities described above, which carry the instant case beyond the Green case and bring it within the "solicitation plus" rule, were not present in the Murray and Fiorella cases, where the foreign railroad corporations' local agents engaged in "mere solicitation".

■ I conclude that Atlantic Coast Line is "doing business" in this district, has been served with process in a proper manner, and is therefore subject to the jurisdiction of this court. Furthermore, the venue of the present action is properly laid in this district as to Atlantic Coast Line, since it is "doing business" here. 28 U.S.C. § 1391 (a, c).

■ Atlantic Coast Line's further contention that the maintenance of this suit would impose an undue burden on interstate commerce is without merit. It is well settled that where a defendant is doing business within a district to an extent to make it subject to service of process and where the plaintiff is a citizen and resident of the district, a trial within that district places no undue burden on interstate commerce.[8]

The Complaint fails to state under what specific statutes the jurisdiction of this court is invoked over the federal cause of action. It contains the general allegation, however, that defendants' acts "were in direct violation of the Constitution and laws of the United States and of the regulations of the Interstate Commerce Commission."

■ By indirection plaintiff attempts to bring the case under the coverage of the Civil Rights Act[9] by stating the conclusion of law that defendants' actions "were committed under color of the laws of the State of South Carolina." However, there are no factual allegations that defendants, which are privately owned railroad corporations, or their agents or employees, acted or purported to act as state officials or, possibly, in conspiracy with state officials[10] in the incident complained of in the present case. Therefore, the Complaint, as I see it, does not state a cause of action under the Civil Rights Act.

---

5. Cf. Barnett v. Texas & P. Ry. Co., 2 Cir., 1944, 145 F.2d 800, 804.

6. See Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926; Hutchinson v. Chase & Gilbert, 2 Cir., 1930, 45 F.2d 139, 141; Perkins v. Louisville & N. R. Co., D.C.S.D.Cal.1951, 94 F.Supp. 946.

7. But see Kendrick v. Seaboard Air Line R. Co., Civil action No. 6754, D.C., 98 F.Supp. 372.

8. International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S. Ct. 797, 78 L.Ed. 1396; cf. Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 51, 62 S.Ct. 6, 86 L.Ed. 28; Miles v. Illinois Central R. Co., 315 U.S. 698, 701, 62 S. Ct. 827, 86 L.Ed. 1129.

9. 28 U.S.C. § 1343(3).

10. Civil Rights Act of April 20, 1871, Sec. 1, Rev.Stat. Sec. 1979, 8 U.S.C.A. § 43; Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240; Schatte v. International Alliance, Etc., 9 Cir., 1950, 182 F. 2d 158, 166–167.

Plaintiff also contends that he has stated a cause of action under the Interstate Commerce Act. Under the provisions of Section 3(1) of the Interstate Commerce Act 49 U.S.C.A. § 3(1) [11] carriers subject to the Act are prohibited from giving undue preference or advantage to any person or from subjecting any person to "undue or unreasonable prejudice or disadvantage in any respect whatsoever".

Section 8 of the Interstate Commerce Act, 49 U.S.C.A. § 8,[12] establishes liability on the part of a common carrier to persons injured by reason of the carrier's violation of the Act, and Section 9, 49 U.S.C.A. § 9, provides that a person having a cause of action under Section 8 "may either make complaint to the commission * * * or may bring suit * * * for the recovery of * * * damages * * * in any district court of the United States of competent jurisdiction * * *."

Defendants concede that plaintiff has a right of action under Section 8 of the Interstate Commerce Act for the alleged violation of rights granted by Section 3(1) of the Act, but they contend that this federal action should be dismissed because exclusive primary jurisdiction over its subject matter rests with the Interstate Commerce Commission.[13]

Defendants' reasoning may be summarized as follows: The acts complained of were done pursuant to Atlantic Coast Line's regulations providing for the segregation of white and Negro coach passengers. A determination of whether the application of these regulations subjected plaintiff to unequal treatment, in violation of Section 3(1), requires a preliminary inquiry into the reasonableness of these regulations. The Interstate Commerce Commission has exclusive jurisdiction to make a primary determination as to the reasonableness and validity of these regulations (indeed, of any regulations or practices of common carriers). Therefore, they contend, this Court lacks jurisdiction over the subject matter of the action brought under the Interstate Commerce Act.

In Texas & Pac. Ry. v. Abilene Cotton Oil Co.,[14] the Supreme Court laid down the "primary jurisdiction" doctrine, which may be broadly stated as follows: In an action where a railroad rate, rule, regulation, or practice is attacked as unreasonable or as unjustly discriminatory, there can be no recovery of damages for unjust discrimination under the Interstate Commerce Act unless and until the Interstate Commerce Commission has made a primary determination that the challenged rate, rule, regulation, or practice is unreasonable or unjustly discriminatory.

The reasons behind the "primary jurisdiction" doctrine and, by implication,

11. 49 U.S.C.A. § 3(1) is as follows: "It shall be unlawful for any common carrier subject to the provisions of this chapter to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

12. 49 U.S.C.A. § 8 in pertinent part is as follows: "In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter * * *."

13. This same contention was recently overruled in Solomon v. Pennsylvania R. Co., D.C.S.D.N.Y.1951, 96 F.Supp. 709. In that case plaintiff, a Negro lady, recovered damages for injuries sustained when she was forced by an Atlantic Coast Line conductor to give up her reserved seat and other accommodations in one car and to accept a seat and inferior accommodations in another car, restricted to Negroes.

14. 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553.

the limits of its applicability have been well expressed by Mr. Justice Brandeis, as follows: " * * * Preliminary resort to the Commission * * * is required because the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable, and such acquaintance is commonly to be found only in a body of experts. * * * " [15]

■ In the present case the inquiry into the reasonableness of Atlantic Coast Line's segregation regulations, pursuant to which the acts complained of were performed, is not "essentially one of fact and of discretion in technical matters" requiring "acquaintance with many intricate facts of transportation" which is "commonly to be found only in a body of experts." The determination of whether these regulations and their enforcement subjected plaintiff to unequal and undignified treatment is a non-technical matter which a court is fully, and indeed especially, competent to make. Such a determination does not call for "technical knowledge pertaining to transportation (which) must first be passed upon by the Interstate Commerce Commission before a court can be invoked." [16] Therefore, the "primary jurisdiction" doctrine is clearly not applicable in the instant case, and suit may be brought in this court even though the Interstate Commerce Commission has not been called upon to consider the reasonableness of the regulations involved in the case.

■ In the instant case the Complaint contains no allegation that the accommodations in CH3, the coach restricted to Negro passengers to which plaintiff allegedly was forced to move, were in any respect inferior to the accommodations in the coaches restricted to white passengers. However, plaintiff does allege that he was treated unequally and discriminatorily, in violation of Section 3(1) of the Act, by reason of his being forced to move from one car to another in an allegedly tortious and humiliating manner. Therefore, plaintiff has stated a cause of action under Section 8 of the Interstate Commerce Act.

■ Since there is no diversity of citizenship between plaintiff and defendant Pennsylvania Railroad, both being citizens of Pennsylvania, this court is without jurisdiction over plaintiff's common law action against Pennsylvania Railroad. Nevertheless, the Complaint, having stated a federal cause of action under the Interstate Commerce Act against both defendants, cannot be dismissed as to Pennsylvania Railroad.

To summarize: (1) Atlantic Coast Line is subject to the jurisdiction of this court. (2) Venue is properly laid in this district as to Atlantic Coast·Line. (3) Maintenance of the suit in this district does not impose a burden on interstate commerce. (4) The Complaint states a federal cause of action under the Interstate Commerce Act and also states several common law causes of action. (5) This court has jurisdiction over the diversity or common law action against Atlantic Coast Line. (6) This court is without jurisdiction over the diversity action against Pennsylvania Railroad. (7) This court has jurisdiction over the federal action under the Interstate Commerce Act against both defendants.

And now, June 26, 1951, in accordance with the foregoing opinion, it is ordered that Atlantic Coast Line Railroad Company's Motion to Dismiss the Complaint as to it be and it is hereby denied, and that The Pennsylvania Railroad Company's Motion to Dismiss the Complaint as to it be and it is hereby denied.

15. Great Northern R. Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943.

16. Rochester Tel. Corp. v. U. S., 1939, 307 U.S. 125, 139, 59 S.Ct. 754, 761, 83 L. Ed. 1147; cf. Solomon v. Pennsylvania R. Co., D.C.S.D.N.Y.1951, 96 F.Supp. 709, 712.