Fred W. **KULICKE**

v.

**ROLLWAY BEARING COMPANY, Inc.**

Civ. A. No. 17799.

United States District Court

E. D. Pennsylvania.

June 1, 1955.

John J. Brooks, Philadelphia, Pa., for plaintiff.

George E. Beechwood (of Conlen, La-Brum & Beechwood), Philadelphia, Pa., for defendant.

LORD, District Judge.

Plaintiff, a citizen of Pennsylvania, and a former engineering representative of the defendant, a New York corporation, has brought this action for an alleged breach of an employment contract. The defendant has filed a motion to dismiss the action for want of jurisdiction. Thus, the question is presented as to whether the activities of the defendant constitute doing business in Pennsylvania so as to render it subject to the jurisdiction of this Court. Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C., provides that service of process on a foreign corporation is valid if done in the manner prescribed by the law of the state in which the service is made.

The facts developed at a hearing on defendant's motion are as follows: defendant is a foreign corporation organized and existing under and by virtue of the laws of the State of New York and is not registered to do business in the Commonwealth of Pennsylvania. It is engaged in the manufacture and sale of cylindrical roller bearings. It has an office in the City of Philadelphia where it is listed in the lobby of the office building and its name appears on the door of its office. The lease is in the name of the engineering representative but it is assigned to the defendant which pays the rent, telephone bills and other expenses

of operation. On all correspondence emanating from the Philadelphia office quoting prices and furnishing delivery information, the name of the defendant appears with "Philadelphia Office" added, giving its address and telephone number in Philadelphia. In its advertisements and catalogs, defendant lists its Philadelphia office. The defendant does a substantial business in Pennsylvania and for the last ten years has averaged $300,000, exclusive of the war years. The furniture and equipment is owned by the defendant. It is listed in the Philadelphia telephone directory as well as in the classified directory. There are two employees in the office, one, an engineering representative for Eastern Pennsylvania and surrounding states, and the other who acts as secretary and sales assistant, on occasion quoting prices to customers. The duties of the engineering representative, a graduate engineer, are to advise customers and prospective customers as to the design, type, use, and fitness of purpose of defendant's products in the customer's business, and to endeavor to obtain orders, make sales, and generally to promote business for the defendant. To that end, he will make drawings and designs for submission to prospective customers and work on the customer's own drawings and designs at their plants, making specific recommendations. Where necessary, he will make specifications and dimensions of bearings for a particular customer's need which would be submitted to the home office in Syracuse for approval. He has sole authority to hire and fire personnel in the Philadelphia office. He participates in practically every sale in his territory. On occasion, he has been asked to assist in the collection of accounts. He has authority to quote prices for the defendant's products within a certain range and with certain limitations to encourage the issuance of purchase orders by customers which would be accepted at the home office. He checks the supply of bearings on hand of the defendant's licensed distributors to ascertain whether they have sufficient stock and inventory. He advises customers as to delivery dates and shipments. He approaches prospective customers from leads given him by the sales office of the defendant at Syracuse, who are his superiors. He also develops leads from classified directories and advertisements in the industry magazines. He regularly visits the purchasing agents of defendant's customers. He is paid a salary of $7,200 a year plus commissions on the volume of business done annually in the territory.

The question of the validity of service of process upon a foreign corporation has been one of frequent recurrence before the courts. The variables present in each case account for the lack of any well-defined formula for determining what constitutes the doing of business by such a corporation so as to subject it to a particular jurisdiction.

While there are conflicting views, and each case must be decided on its own facts, it would appear to be generally recognized, and the Supreme Court has said, that solicitation alone is not sufficient to constitute doing business. Green v. Chicago, Burlington & Quincy Ry. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. Later, in International Harvester Co. v. Kentucky, 1914, 234 U. S. 579, 586, 34 S.Ct. 944, 58 L.Ed. 1479, the court held that solicitation plus other activities would be sufficient, and in referring to the Green case, labeled it as an "extreme case". It also said that each case must be decided on its own facts and there is jurisdiction if the corporation is carrying on business in such sense as to manifest its presence within the state. As Chief Judge Kirkpatrick of this Court said, the rule in the Green case " 'readily yields to slight additions.' " Minker v. Pennsylvania R. Co., D.C.E.D.Pa.1945, 63 F.Supp. 1017, 1020.

Further, in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310 at page 319, 66 S.Ct. 154, at page 160, 90 L.Ed. 95, in considering the same problem the Supreme Court said:

"But to the extent that a corporation exercises the privilege of conducting activities within a state,

it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare International Harvester Co. v. Kentucky, supra, with Green v. Chicago, Burlington & Quincy Ry. Co., supra, and People's Tobacco Co. v. American Tobacco Co., supra [246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587]. Compare Connecticut Mutual Life Co. v. Spratley, supra, 172 U.S. [602] 619, 620, 19 S.Ct. [308] 314, 315, 43 L. Ed. 569, and Commercial Mutual Co. v. Davis, supra, with Old Wayne Mutual Life Ass'n v. McDonough, supra [204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345]. See 29 Columbia Law Review, 187–195.

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. *The obligation which is here sued upon arose out of those very activities.* It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. * * *" (Emphasis supplied.)

To the same effect see Landell v. Northern Pac. Ry. Co., D.C.D.C.1951, 98 F.Supp. 479, in which the court held that where a foreign corporation enjoyed the fruits of the local jurisdiction, as such, either under the "solicitation plus" theory, or the more liberal doctrine as announced in the International Shoe case, supra, it should be amenable to process. It must be kept in mind that the present plaintiff, a former engineering representative of the defendant, has brought this action to enforce the provisions of an employment contract he had with the defendant. Certainly, it can be said that this obligation arose out of the very activities conducted by the defendant within the Commonwealth of Pennsylvania. He had been the engineering representative of defendant in Pennsylvania for almost twenty years prior to the termination of such employment in October, 1953.

An enlightened analysis of the principles of personal jurisdiction over a foreign corporation and a review of the trend of modern decisions may be found in Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, at page 516, 146 A.L.R. 926, where Justice Rutledge said: "In general the trend has been toward a wider assertion of power over nonresidents and foreign corporations than was considered permissible when the tradition about 'mere solicitation' grew up." He recommended the abandonment of the "mere solicitation" rule when the soliciting activity is a regular, continuous and sustained course of business. While the present case is a close one I believe " * * * the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics." Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900, 903.

In Moore v. Atlantic Coast Line R. Co., D.C.E.D.Pa.1951, 98 F.Supp. 375, in granting jurisdiction, Judge Grim of this District considered the entire question in an exhaustive and well-reasoned opinion. He concluded this Court was not bound by the Pennsylvania decisions concerning the state venue requirements of "doing business" and refused to fol-

low the decision of the Pennsylvania Supreme Court in Law v. Atlantic Coast Line R. Co., 1951, 367 Pa. 170, 79 A.2d 252, involving the activities of the same railroad in Pennsylvania. I agree with his conclusion that the cases in this District cited by the defendant as sustaining its position,[1] can be distinguished on the facts, in that there are present in this case additional activities which bring it within the "solicitation plus" rule. Defendant stresses that the engineering representative had no authority to accept orders and bind the defendant as to sales. This would not appear to be controlling when we consider all of the representative's other duties undertaken on behalf of the defendant.

The defendant relies strongly on the decision of this Circuit in Partin v. Michaels Art Bronze Co., Inc., 1953, 202 F.2d 541, and cites it as determinative of the issue. However, that case was an action for libel and had nothing to do with the regular business activities of the defendant in the Commonwealth of Pennsylvania. In addition, it manufactured and distributed parking meters and between 1946 and 1950 only two orders were received for the installation of such meters in Pennsylvania. While it also manufactured other metal products, the material was shipped directly to the customers and was erected and installed by them. The sales representatives of the company in Pennsylvania were not subject to the control of the defendant but operated independently, met their own expenses and were paid on a commission basis. The court concluded that the case was controlled by the Pennsylvania law as set forth in Lutz v. Foster & Kester Co., Inc., 1951, 367 Pa. 125, 79 A.2d 222. However, the Lutz case held there is no general principle or standard whereby it may be conclusively determined in all instances what constitutes "doing business", and the decision in each case depends upon its own peculiar facts. It is my judg-

ment that the facts in the present case are distinguishable from the facts in the Lutz case. Furthermore, Chief Judge Biggs, while concurring in the Partin result criticized the Lutz case in saying, 202 F.2d at page 545, "But the Lutz decision presents too narrow a construction of doing business when measured by Section 2 of Article III of the Constitution."

Furthermore, the Lutz case was decided in March of 1951. The same year the Legislature of Pennsylvania, September 26, 1951, P.L. 1475, 15 P.S. § 2852–1011, amended the Pennsylvania Business Corporation Law of 1933 as to service of process on foreign corporations and defined what constitutes "doing business" within the Commonwealth as follows, § 2852–1011, subd. C:

> "C. For the purposes of this act, the entry of any corporation into this Commonwealth *for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object*, or doing a single act in this Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business'. As amended 1951, Sept. 26, P.L. 1475, § 22; 1953, Aug. 19, P.L. 1119, § 10." (Emphasis supplied.)

There can be no doubt of the fact that the defendant has entered the Commonwealth for the doing "of a series of similar acts for the purpose of thereby realizing pecuniary benefit". In my judgment the amendment nullifies, in part, the effect of the Lutz opinion.

I conclude that there are sufficient business activities of the defendant to bring it within the scope of the "solicitation plus" cases; that it comes within the amendment of 1951, and, accordingly, it is ordered that the defendant's motion to dismiss the complaint for want of jurisdiction be and the same is hereby denied.

1. Murray v. Great Northern Ry. Co., D.C. E.D.Pa.1946, 67 F.Supp. 944; Fiorella v. Baltimore & O. R. Co., D.C.E.D.Pa. 1950, 89 F.Supp. 850; Solt v. Interstate Folding Box Co., D.C.E.D.Pa.1954, 123 F.Supp. 376.