## Scuillo v. Royal Travel Corporation

*Norman G. Haywood,* for plaintiff.
*Daniel P. Stefko,* defendant Royal Travel.
*Cosmos J. Reale,* defendant Gateway Broadcasting.
*Theodore E. Breault,* defendant Oceanus.

FINKELHOR, J., May 24, 1974.—The instant causes of action in *both* assumpsit and trespass came before the court on preliminary objections of defendant, Oceanus Hotel, Ltd., a foreign corporation domiciled in the Bahama Islands and raising the issues of both jurisdiction and venue.

Plaintiff, a resident of Plum Borough, Allegheny County, was injured due to the alleged tortious act of defendant, Oceanus Hotel, while plaintiff was a business invitee of said hotel in Freeport, Grand Bahama Island, in January 1971.

In addition to Oceanus, plaintiff has also sued Royal Travel Corporation, a Washington County corporation, which provided the travel arrangements, Gateway Broadcasting Enterprises, an Allegheny County corporation, which promoted the trip, and Sun, Sand and Sea Travel Agency, Ltd., described in the complaints as the exclusive agent of Oceanus Hotel and located in New York City. Only the defendant, Gateway Broadcasting Enterprises, is a party based in Allegheny County.

In the assumpsit action, plaintiff alleges breach of warranty and in the trespass action the negligence of

Oceanus Hotel in maintaining safe and proper premises for the use of business invitees.

The complaint in both actions was served upon the Department of State with a copy thereof addressed to defendant Oceanus, pursuant to the revised and simplified procedure of Act No. 271 enacted November 15, 1972, P. L. 885, 42 Pa. S. §8307.[1]

The specific issue before the court is whether the Allegheny County Court of Common Pleas has jurisdiction over Oceanus, a foreign corporation located in the Bahama Islands. To determine jurisdiction, the essential question is whether defendant Oceanus, a foreign, nonresident corporation, was "doing business" within the Commonwealth of Pennsylvania as defined by Act No. 271 of 1972, 42 Pa. S. §8309.

An affidavit has been filed by the secretary-treasurer of defendant, Royal Travel Corporation, to the effect that Oceanus solicited business through Royal Travel, that Royal Travel made numerous reservations for clients and customers at Oceanus, that payments for room and service charges were made by said clients to Royal Travel and that Oceanus paid commissions to Royal Travel for business, directed to Oceanus, by Royal Travel.

Since these matters are not set forth in plaintiff's complaints, which allege the exclusive agency of the Sun, Sand and Sea Travel Agency for defendant Oceanus, plaintiff has requested leave to amend his pleadings to allege the agency of Royal Travel.

The affidavit of the general manager of defendant

---

[1] Prior to Act No. 271, the Pennsylvania "Long Arm" statute was section 1011 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 PS Supp. §2011, which required a petition, alleging that a foreign corporation was doing business within the Commonwealth, to the Common Pleas Court for service upon the Secretary of the Commonwealth.

Oceanus denies doing business in the Commonwealth or any relationship or connection with other defendants in this law suit.

Section 8309 of Act No. 271, supra, reenacted and extended the provisions of section 1011 of the Business Corporation Law of 1933, supra,[2] to define "doing business" for the purposes of jurisdiction as follows:

"(a) General rule—Any of the following shall constitute 'doing business' for the purposes of this chapter:

"(1) The doing by any person in this Commonwealth of a *series of similar acts* for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

"(2) The doing of a *single act* in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

"(3) The *shipping of merchandise* directly or indirectly into or through this Commonwealth.

"(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

"(5) The ownership, use or possession of any real property situate within this Commonwealth.

"(b) *Exercise of full constitutional power over foreign corporations*—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States." (Emphasis added.)

The above act restates the definition of "doing business" previously defined in the Business Corporation

---

[2] See Appendix A for the specific language of section 1011.

Law to include (1) a series of similar acts for pecuniary benefit; (2) a single act for pecuniary benefit with the intention of initiating a series of similar acts and (3) the shipping of merchandise directly or indirectly into the Commonwealth but broadened to include both individuals and corporations.

In addition, the 1972 Act includes for the first time paragraph (b) stating the legislative intent to extend jurisdiction of courts within the Commonwealth over foreign corporations to the fullest extent allowed under the Constitution of the United States: Knapp v. Franklin Coach Company v. Wagner Motor Sales, Inc., 365 F. Supp. 305 (W.D. Pa., 1973).

Historically, the prerequisite for jurisdiction in Pennsylvania over unregistered foreign corporations has been the "doing of business by the corporation in Pennsylvania." However, the frequent changes in the Pennsylvania Long Arm Act and the factual variations in the appellate decisions have impeded the formulation of current criteria for determining what constitutes the "doing of business" by a foreign corporation for the purposes of jurisdiction.

The initial guidelines, established by the landmark Pennsylvania decision Shambe v. Delaware & Hudson R.R. Co., 288 Pa. 240, in 1927, required acts directly furthering or essential to corporate objectives and sufficiently continuous to be termed *general* or *habitual.* This so-called "solicitation plus" formula of Shambe has been increasingly liberalized by both statutory amendments and Federal and State judicial decisions.

However, despite this trend to liberalize the concept of jurisdiction over the activities of a foreign corporation, Pennsylvania law, as recognized in the 1972 legislation, is affected and limited by the due process clause of the fourteenth amendment to the United States Constitution: Williams v. Connolly, 227 F. Supp. 539

(1964); International Shoe Co. v. State of Washington, 326 U. S. 310 (1945); Nettis v. Di Lido Hotel, 215 Pa. Superior Ct. 284 (1969).

In the definitive case, International Shoe Company v. Washington, supra, at 316, the United States Supreme Court set forth the following basic principle:

"[D]ue process requires only that in order to subject a defendant to judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Emphasis added.)

As further defined by Justice Stone, the test depends on "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure": 326 U. S. 310, 319.

In determining the "minimum contacts" or "quality and nature" of the corporate activity, agency, volume of business, number of employes and similar activity within the State have been equated.

In Nettis v. Di Lido Hotel, 215 Pa. Superior Ct. 284 (1969), the Superior Court summarized the previous case law as follows:

"Activities coming within this category are: control over the activity of a local distributor. Florio v. Powder Power Tool Co., 248 F. 2d 367; volume of business such as in Kulicke v. Rollway Co., 131 F. Supp. 572, where defendant corporation made $300,000.00-a-year average over a ten-year period in the forum state; number of employees in the state, International Shoe Company v. State of Washington, 326 U. S. 310; impact on the economic well-being of citizens in the state, McGee v. International Life Insurance Co., 355 U. S. 220; an exclusive independent distributor in the forum

state by which the products were sold, Eclipse Fuel Engineering Company v. Superior Ct., 307 P. 2d 739; authorizing an independent manufacturer's agent to take orders and subsequent shipment of goods into the forum state, Wisconsin Metal and Chemical Corp. v. DeZurik Corp., 222 F. Supp. 119; a contract made and breached in the state, Enco, Inc. v. F. C. Russell Co., 311 P. 2d 737. The case of Williams v. Connolly, 227 F. Supp. 539, sets forth further illustrations on this subject and all of them demonstrate the type of activity that establishes a substantial contact justifying state jurisdiction over a foreign corporation": 215 Pa. Superior Ct. 294, 295.

In addition, the cases divide sharply between those where merchandise is shipped directly into the Commonwealth, adopted in the 1968 amendment to establish jurisdiction in product liability cases (McCrory Corp. v. Girard Rubber Corp., 61 D. & C. 2d 319 (1972), affirmed 225 Pa. Superior Ct. 45;[3] Gorso v. Bell Equipment, 476 F. 2d 1216 (3rd Cir., 1973);[4] Carl v. Positive Safety Manufacturing Co., 316 F. Supp. 1302 (1970)), and those *"acts"* of the corporation which do not involve specific products or merchandise but are for the purpose of realizing "pecuniary benefit" as in the instant proceedings: Miller v. Kiamesha-Concord, Inc., 420 Pa. 604 (1966); Goldstein v. Carillon Hotel, 424 Pa. 337 (1967); Nettis v. Di Lido Hotel, supra.

In Miller v. Kiamesha-Concord, Inc., supra, decided prior to the 1968 amendment, plaintiff, a guest, sued defendant hotel for personal injuries due to alleged

---

[3] Presently on appeal to the Pennsylvania Supreme Court.

[4] Gorso v. Bell Equipment, 476 F. 2d 1216 (3rd Cir., 1973), reversing 330 F. Supp. 834 (W.D. Pa., 1971), to the effect that the shipping of a single product (a crane) into the Commonwealth was insufficient to establish jurisdiction did not consider the 1972 legislation.

negligence. Defendant had a Philadelphia representative who contacted various travel agencies to familiarize them with the facilities of the out-of-state resort hotel. She accepted reservations but was not authorized to confirm them and operated out of her own home without cost to defendant. The Supreme Court held that, based upon these facts, agency of the representative had not been established and, therefore, under the then long arm statute defendant was not "doing business" in Pennsylvania for the purposes of establishing jurisdiction.

In Goldstein v. Carillon Hotel, supra, decided by the Supreme Court in 1967, the wife-plaintiff was a guest in a hotel operated by defendant in Miami Beach, Fla., and sustained personal injuries as a result of a fall which occurred on the hotel premises. Service was made on an office maintained by defendant in the Bellevue Stratford Hotel in Philadelphia and the court found jurisdiction. The case was distinguished from Miller, supra, in that the persons in charge of the non-resident corporation's Philadelphia office were direct employes of the corporation on a salary basis and second that these representatives had the power to issue *confirmed* reservations for available space and thereby bind the defendant.

In Nettis v. Di Lido Hotel, supra, decided after the 1968 amendments to the Pennsylvania Business Corporation Law, which removed the specific language of "entry," the alleged representative placed advertisements for defendant hotel in one local newspaper which included the telephone number of a local representative. The Superior Court reversed the trial court, found "no substantial contact or ties to the State of Pennsylvania" and further held that advertising *alone* does not constitute the introduction of defendant's business into the State.

More recently, but prior to the 1972 amendment, the United States District Court for Puerto Rico in In Re Puerto Rico Air Disaster Litigation, 340 F. Supp. 492 (1972), interpreted the 1968 Pennsylvania Act to exclude interline ticket sales to establish jurisdiction even though travel agents in Pennsylvania had booked interline passage through originating carriers. The district court relied on Miller v. Kiamesha-Concord, Inc., supra.

In essence, prior to the 1972 Act, *section c* of the Pennsylvania Long Arm Act, as amended in 1968 (see Appendix A), was interpreted to require some representative of the foreign corporation within the Commonwealth either as a direct employe or authorized agent with the *authority* to commit or act for the foreign defendant in those instances which did not involve the shipping of a product into the State.

Three recent federal district court cases have interpreted the 1972 legislation, specifically paragraph (b), indicating legislative intent to extend jurisdiction to the constitutional limits: Knapp v. Franklin Coach Co., supra; Mackenworth v. American Trading Transportation Co., 42 L. W. 2312 (U. S. D. C., E. Pa., Nov. 19, 1973); Rosen v. Solomon, 42 L. W. 2572 (U. S. D. C., E. Pa., April 18, 1974).[5]

In Mackenworth v. American Trading Transportation Co., supra, the concept of expanded jurisdiction inspired the Eastern District Court to verse and the rhyming Federal jurist jingled as follows:

"Ship's *single* visit to Pennsylvania
 port,
subjects owner to that state's federal
 court
for Pennsylvania's amended

---

[5] Because of the delay in the reporting of trial court decisions, the court has been unable to find cases from State courts.

> long-arm acts
> give court personal jurisdiction,
> since under these facts
> New York Shipping company,
> while unloading its stores,
> was 'doing business' upon
> Pennsylvania shores." (Emphasis added)

42 L. W. 2312

Maintaining perfect iambic beat, the court found jurisdiction on the basis of a "single act" and further noted the constitutionality of the Pennsylvania new long arm statute as being within

> "[That decision of the Supreme
> Court of Courts
> . . . found at page 310 of
> 326 U. S. Reports.]" 42 L. W. 2312

A less poetic eastern district court in Rosen v. Solomon, supra, also noted the expanded concept of jurisdiction in the 1972 Act and interpreted section 8305[6] to include a nonresident individual defendant where the contract was negotiated and ultimately executed by plaintiff in Pennsylvania even though defendant was a resident of California and had never entered the Commonwealth.

Thus to establish jurisdiction, under Pennsylvania law, any person (corporation or individual) must perform a series of acts or a single act with the intention of initiating a series of acts for the purpose of realizing

---

[6] Section 8305 provides as follows:

"§8305. Causing harm by individuals.

Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct."

pecuniary benefit. Direct entry into the Commonwealth is not a prerequisite but "minimum contacts" or ties must be established but are not required to be "general" or "habitual." In travel cases prior to the 1972 Act, advertising or general and undirected solicitation of business has been held insufficient to establish jurisdiction but the confirmation of hotel reservations by a local agent, the negotiation of the travel and hotel agreement and the execution of the travel and hotel agreement in Pennsylvania would appear to satisfy the criteria of "minimum contact" required by Federal due process.

Assuming that the 1972 Act has expanded Pennsylvania jurisdiction to the furtherest perimeter of due process, the affidavit of defendant, Royal Travel, would seem to recite sufficient facts to establish the minimum ties required for jurisdiction. The affidavit describes an on-going and continuous relationship between the two defendants, including the authority to confirm reservations for hotel accommodations plus the negotiation and payment for these reservations within Pennsylvania. In other words, if Royal Travel's affidavit is believed, the travel and hotel arrangements were consummated in Pennsylvania.

Further, plaintiff in these proceedings has instituted proceedings in *both* assumpsit and trespass. If plaintiff's hotel contract was negotiated and executed in Pennsylvania, this, in itself, would meet the criteria of jurisdiction.

However, plaintiff's complaints, as presently stated, fail to allege the site of the contract or sufficient "acts" of Oceanus to bring the nonresident defendant within either the "minimum contact" of International Shoe or the 1972 Pennsylvania Act. In fact, the allegation that defendant, Sun, Sea and Sand, a New York cor-

poration, is the exclusive agent of Oceanus negates the relationship of Oceanus and Royal Travel.

Pursuant to Pennsylvania Rule of Civil Procedure 1006(c), venue can be established if one of the joint defendants is based within the county. Gateway Broadcasting Enterprises is located within Allegheny County.

Not to be outdone by the Federal bench of the Eastern District (Mackenworth v. American Trading Transportation Co.), the poetry of jurisdiction can be summarized as follows:

While a "ship's single visit to
 a Pennsylvania port,
Subjects owner to that state's
 federal court"
And as stated by the
 Honorable Becker, J.
Pennsylvania's amended Long-Arm Act
 goes all the way.

Those seeking surcease
 from urban strife
And who long for the happy
 beachcomber's life,
Had best consult a member
 of the local bar
Before setting forth
 to islands far.

Does the Shangri-la of
 their dreams
Do business in Pennsylvania
 streams
What is the contact between
 that sun resort

And the jurisdiction of
 a Pennsylvania court?

Where does the money pass
 on the transaction,
To determine where is
 the cause of action.
Was the contract made
 in the frigid north
Before our chilly plaintiff
 did set forth?

Pursuant to learned Cercone, J.
 advertising alone
Will not pave
 the way
And without extending
 this couplet and rhyme
Dollar volume over a
 period of time
Can establish those "contacts"
of *International Shoe*
The guidelines for plaintiff's
 right to sue.

Whether in verse or prose, the preliminary objections of defendant, Oceanus, to plaintiff's complaints, as presently stated, are sustained. Plaintiff is granted 21 days to file amended complaints in accordance with this opinion.

APPENDIX A

Chronological History of Business Corporation Law of 1933—Section 1011, 15 PS §2011c.

1. Original 2011(c) enacted May 5, 1933, P. L. 364, Art. X, sec. 1011.

2. Act of August 13, 1963, P. L. 703, sec. 1:

"For the purposes of determining jurisdiction of courts within this Commonwealth, the *entry* of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in the Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

3. Amendment of July 20, 1968, P. L. 459 (No. 216), sec. 54

"For the purposes of determining jurisdiction of the courts within this Commonwealth the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business." *For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.*" (emphasis added.)

4. Repealed, November 15, 1972, P. L. 885 (No. 271), sec. 5, 42 Pa. S. §8307, effective in 90 days.

## ORDER OF COURT

And now, May 24, 1974, upon the preliminary objections filed by defendant, Oceanus Hotel, Ltd., and after consideration of the arguments and briefs of the parties, it is ordered that said preliminary objections are hereby sustained.

It is further ordered that plaintiff is granted 21 days to file amended complaints.