Nettis *v.* Di Lido Hotel, Appellant.

Argued June 14, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*David A. Saltzburg,* with him *Bennett, Bricklin & Saltzburg,* for appellant.

*Michael M. Goss,* with him *Weinstein and Bobrin,* for appellees.

OPINION BY CERCONE, J., September 11, 1969:

Plaintiff Minnie Nettis was injured at the Di Lido Hotel in Miami, Florida, while on vacation there in

the summer of 1967. She and her husband Harry Nettis sued the hotel in the Common Pleas Court of Philadelphia County, Pennsylvania. The sheriff made service of the complaint pursuant to Pa. R.C.P. 2180 (a)(2) on August 28, 1968 by handing a copy of it to Bob Siegel, a travel agent, at his place of business located at 211 South Broad Street, Philadelphia, Pennsylvania.

Defendant hotel filed preliminary objections to the service of the complaint in trespass objecting to the jurisdiction of the court for the reason that defendant was a foreign corporation not doing business in the Commonwealth of Pennsylvania and did not have an agent authorized to accept service of process in Pennsylvania.

Plaintiff's answer asserted the propriety of the jurisdiction and service on the ground that defendant was doing business in Pennsylvania and Siegel was defendant's agent in Pennsylvania.

After oral deposition of Bob Siegel and argument, the court below dismissed the preliminary objections and in a memorandum opinion declared that the service was valid because defendant was doing business in Pennsylvania according to the provisions of the 1968 Amendment to the Pennsylvania Business Corporation Law of 1933, Sec. 1011C.[1] However, the lower court did not decide the question of whether or not Bob Siegel was an agent upon whom service could be properly made under Pa. R.C.P. 2180(a)(2). The lower court should have decided this question for, unless Siegel, the person served, was defendant's agent, the fact that defendant was doing business in Pennsylvania would not of itself have given the court jurisdiction.

---

[1] The Act of May 5, 1933, P.L. 364, as amended by the Act of August 13, 1963, P.L. 703, Sections 1, 2; January 18, 1966, P.L. (1965), 1305, §46.

If defendant was doing business in Pennsylvania and had no agent to represent it here, the proper method of service was not under Section 2180(a)(2), but under Section 1011B of the Pennsylvania Business Corporation Law of 1933, as amended, supra, by serving a copy of the complaint on the Secretary of the Commonwealth: *Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177 (1967). In the *Myers* case two persons were killed at Forest Hills, Maryland, in an airplane that had been manufactured by Mooney Aircraft, Inc., a Texas corporation. Suits in behalf of the deceased persons were brought in Lancaster County, Pennsylvania. In one of the actions, service was made under the provisions of Pa. R.C.P. 2180(a)(2) on a Henry Weber, a distributor and director of Mooney, at Weber's place of business in Lancaster County. In the other action, service of process on Mooney was sought to be effected by two methods: one, by delivery of a copy of the complaint to Weber at his place of business purportedly in compliance with Pa. R.C.P. 2180(a)(2); and two, by service of a copy of the complaint by registered mail upon the Secretary of the Commonwealth under the provisions of Sec. 1011B of the Pennsylvania Business Corporation Law of 1933, as amended, supra.

The court in *Myers*, supra, found that Mooney was doing business in Pennsylvania but had no agent in Pennsylvania; that Weber was an independent contractor and, therefore, the complaints served on Weber under Pa. R.C.P. 2180(a)(2) failed to establish the court's jurisdiction over defendant. The court did, however, uphold the service made upon the Secretary of the Commonwealth under the provisions of Sec. 1011B of the Pennsylvania Business Corporation Law, supra, as the proper method of establishing jurisdiction over defendant.

The important decision to be made in this case, therefore, is whether or not Siegel, the Philadelphia travel agent, was an agent of the defendant hotel. If he was not an agent, then the service upon him in this suit was not a proper service upon the defendant, and it would be immaterial whether or not defendant was doing business in Pennsylvania. The evidence regarding defendant's relationship with Siegel consists solely of Siegel's deposition and one exhibit, which evidence reveals the following: Bob Siegel operates his own travel agency business from a rented two-room office on the 11th floor of a building located at 211 South Broad Street, in the city of Philadelphia. He is the sole lessee and no one shares the office space with him. The named "Bob Siegel Travel Service" appears on the door. He had no authority to confirm requests for reservations at defendant's hotel if made by any of his clients; the hotel bill was paid by his client directly to the defendant hotel and he received a ten per cent commission on the room and food bill of his client at the hotel; there was no written contract setting forth arrangements between defendant and Siegel; he had similar arrangements with every hotel in Miami Beach, Florida, and with hotels all over the world; he was also authorized to arrange air flights and train trips; he kept rate schedules and brochures in his office on defendant hotel as he did for other hotels; defendant's schedules and brochures enjoyed no prominet place in his office; no representative from defendant hotel ever came to Philadelphia or Pennsylvania; defendant paid none of Siegel's expenses. Siegel made no reservations in 1966 or 1967 for any client at defendant's hotel. In 1968 he arranged two reservations for a couple and a single person.

Siegel testified he represented Di Lido as he represented other hotels, "When a client enters my office and asks me about the Di Lido and asks me to make a

reservation, I take the information, like any other hotel in the world, and mail it to the hotel, like I would with any other hotels." Siegel didn't know the plaintiffs in this case prior to trial and to the best of his knowledge his office did not make the arrangements for plaintiff wife's stay at Di Lido.

Through an oral arrangement, made via an out-of-state telephone call by a representative of defendant to Siegel, it was agreed tha Di Lido would advertise its hotel as a vacation site in the JEWISH EXPONENT, a newspaper published in Philadelphia. At the bottom of the advertisement (1x2 inches) appeared the words, "See your Travel Agent or call Phila. Off: KI 6-6223". The telephone number referred to was Siegel's. When a client called the Siegel office, the response would be: "Reservations, Bob Siegel Travel Service". If someone would ask, "Is this the office of the Di Lido Hotel?" the response would be "Yes". Siegel explained that if someone called for information on Di Lido, Siegel sent no brochure on other hotels. He received no compensation for this. The name Siegel did not appear in the JEWISH EXPONENT advertisement. Siegel did not recall how many times the ad appeared and stated that he received only a few calls in response to the ad. There was no evidence that any reservations for the defendant hotel resulted from these calls. He had no envelopes or stationery of Di Lido. He sent at his expense confirmed reservations in his own envelopes which bore the name "Bob Siegel Travel Service". His office held 15 brochures for each hotel he represented.

This hardly is evidence which can support a principal-agent relationship between Di Lido and Siegel. Siegel was not subject to any direction, control or authority of defendant—prime elements for establishing a principal-agent relationship. It is true that Siegel's efforts in some instances furthered Di Lido's business, but they were carried on in accordance with

Siegel's separate and independent method of operation of his own agency.

The facts in this case are much less impressive than those found not to establish a principal-agent relationship in the case of *Miller v. Kiamesha-Concord, Inc.*, 420 Pa. 604 (1966). In that case, plaintiffs brought suit in Philadelphia against defendant, a New York foreign corporation, operators of a resort hotel at Kiamesha Lake, New York, for injuries allegedly sustained while they were guests at the hotel. Suit was filed in Philadelphia and service made on a Lillian Sternman at her residence in Philadelphia under Pa. R.C.P. 2180(a)(2) on the ground that her residence was an office or place of business of defendant and that she was an agent authorized to receive service of process. Defendant filed preliminary objections attacking jurisdiction on the ground that it was not doing business in Pennsylvania and did not have any agent or anyone authorized to accept service of process in Pennsylvania.

The evidence in the *Miller* case, supra, showed that defendant was a business corporation organized under the laws of New York, and was not registered as a foreign corporation doing business in Pennsylvania. Its business consisted solely of operating a hotel and resort facility situated at Kiamesha Lake, New York. Lillian Sternman served defendant by conducting a "missionary method" of work with various travel agencies, creating good will, familiarizing them with the facilities of defendant's resort hotel and encouraging them to recommend defendant's hotel to their clients. She accepted reservations but was not authorized to confirm them. She operated out of her home and had none of defendant's furniture there. Defendant paid no rent and did not have its name listed or shown on any part of the Sternman property. Mrs. Sternman listed defendant's name in both the yellow or

classified pages and the white pages of the Philadelphia telephone directory, above her home address. She and not defendant paid for this service. Defendant supplied Mrs. Sternman with various types of advertising and literature which Mrs. Sternman distributed to travel agencies and prospective guests. She was also provided with supplies such as envelopes and request forms for reservations bearing the hotel's New York address, on which forms Mrs. Sternman had printed her name and home address. On the basis of these facts, the Supreme Court found that Lillian Sternman was an independent contractor and that defendant itself was not doing business in Pennsylvania.

Siegel, in the instant case, did nothing more than Sternman in the *Miller* case, supra. In fact, Sternman was much more active in behalf of her client. She actively solicited and advertised in behalf of the hotel at Kiamesha Lake. She actively engaged in advertising in her client's behalf, using her name. Siegel, however, did not so actively solicit or so advertise in the present defendant's behalf. The JEWISH EXPONENT advertisement did not mention his name nor name him as the defendant's agent. The advertisement says: "See your Travel Agent or call Phila. Off: KI 6-6223". Under all the circumstances of this case, this was no more than directing the reader's attention to a telephone number of a travel agent in the event the reader had no agent in mind. In any event, standing against all the other facts which are repugnant to a finding of an employee-employer relationship, the advertisement alone cannot create such a relationship: *Stepp v. Renn,* 184 Pa. Superior Ct. 634 (1957); *Feller v. New Amsterdam Casualty Co.,* 363 Pa. 483 (1950); Restatement 2d, Agency §220(2).

Under these circumstances we are of the opinion that the service on Siegel under Section 2180(a)(2) of Pa. R.C.P. was invalid as an effort to bring de-

fendant within the jurisdiction of the court even if defendant was doing business within the Commonwealth. However, we would like to note our disagreement with the lower court's opinion that, on the basis of the 1968 Amendment to Sec. 1011C of the Pennsylvania Business Corporation Law of 1933, as amended, supra,[1] defendant was doing business in Pennsylvania. Section 1011C, as it now stands, reads as follows:

"C. For the purpose of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'. For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth."

The question of the validity of service of process upon a foreign corporation has been one of frequent occurrence in judicial decisions. The various circumstances found in each case make it difficult to establish any well-defined formula for determining what constitutes the "doing of business" by a foreign corporation so as to subject it to a particular jurisdiction. Each case must be decided on its own facts. The trend, however, has been toward a wider assertion of power over non-residents and foreign corporations than was considered permissible in Pennsylvania under the "mere

---

[1] 1933, May 5, P.L. 364, art. X, §1011; 1937, July 2, P.L. 2828, §1; 1951, Sept. 26, P.L. 1475, §22; 1953, Aug. 19, P.L. 1119, §10; 1957, July 11, P.L. 711, §1; 1959, Nov. 10 P.L. 1406, §1; 1963, Aug. 13, P.L. 703, §§1, 2; 1966, Jan. 18, P.L. (1965) 1305, §46; 1968, July 20, P.L.    , §54.

solicitation" or "solicitation plus" tradition found in the cases of *Shambe v. Delaware Hudson Railroad Co.*, (1927), 288 Pa. 240; and *Lutz v. Foster & Kester Co., Inc.*, (1951), 367 Pa. 125; or in the early Federal case of *Pennoyer v. Neff*, 95 U.S. 714.

Despite the tendency to liberalize State authority over the activities of a foreign corporation, there is the limitation provided by the due process clause of the Fourteenth Amendment to the United States Constitution: *Williams v. Connolly*, 227 F. Supp. 539, (1964); *Florio v. Powder Power Tool Corp.*, 248 F 2d 367; *International Shoe Company v. State of Washington*, (1945) 326 U.S. 310. If the provisions of the due process clause are not satisfied, then State jurisdiction, despite State legislation authorizing it, cannot be established over the activity of a foreign corporation.

One of the leading cases interpreting the due process clause with reference to State assertion of jurisdiction over foreign corporations is *International Shoe Company v. State of Washington*, 326 U.S. 310. In that case, the court said, inter alia: "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agent in another state, is a little more or a little less. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate de-

fendant with which the state has no contacts, ties, or relations. . . .

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The important words in *International Shoe,* supra, are *"contacts, ties,* or *relations"* with the forum state. These words necessarily relate to the quality and nature of a foreign corporation's activity within the forum state—a quality and nature which must establish such contact with the state that makes it fair and reasonable for the corporation to answer for its obligations within the state. Activities coming within this category are: control over the activity of a local distributor. *Florio v. Powder Power Tool Co.,* 248 F. 2d 367; volume of business such as in *Kulicke v. Rollway Co.,* 131 F. Supp. 572, where defendant corporation made $300,000.00-a-year average over a ten-year period in the forum state; number of employees in the state, *International Shoe Company v. State of Washington,* 326 U.S. 310; impact on the economic well-being of citizens in the state, *McGee v. International Life Insurance Co.,* 355 U.S. 220; an exclusive independent distributor in the forum state by which the products were sold, *Eclipse Fuel Engineering Company v. Superior Ct.,* 307 P. 2d 739; authorizing an independent manufacturer's agent to take orders and subsequent shipment of goods into the forum state, *Wisconsin Metal and Chemical Corp. v. DeZurik Corp.,* 222 F. Supp. 119; a contract made and breached in the state, *Enco, Inc. v. F. C. Russell Co.,* 311 P. 2d 737. The

case of *Williams v. Connolly,* 227 F. Supp. 539, sets forth further illustrations on this subject and all of them demonstrate the type of activity that establishes a substantial contact justifying state jurisdiction over a foreign corporation.

In *International Shoe Company v. State of Washington,* supra, the defendant employed eleven (11) to thirteen (13) sales managers in the State of Washington. They resided there and their principal activities were confined to that state. They rented permanent sample rooms in business buildings for exhibiting shoe samples, or rented rooms in hotels for that purpose. The cost of such rentals was paid by defendant. They received compensation by commission based upon the amount of their sales. The commissions for each year totaled more than $31,000. The Supreme Court of the State of Washington was of the opinion that the regular and systematic solicitation of orders by defendant's salesmen and their substantial activity, exerted for the sole purpose of furthering defendant's business, resulting in a continuous flow of defendant's product into the State, was sufficient to constitute doing business.

The Supreme Court of the United States affirmed the Washington Court holding that defendant's operations established sufficient contacts and ties with the State of the forum to make it reasonable and just "according to our traditional conception of fair play and substantial justice to permit the State to enforce the obligations which appellant has incurred there."

In the instant case, no substantial contact or ties to the State of Pennsylvania were established. Defendant has no branch offices in Pennsylvania, nor does it own, lease, maintain or otherwise control any office, property or assets within the Commonwealth. It has no paid employees operating exclusively in its behalf in Pennsylvania. There is a lack of evidence of that

quantity and quality of business sufficient to hold the defendant as doing business within the Commonwealth.

The lower court predicated its finding that defendant was doing business in Pennsylvania on the language of the 1968 Amendment to Pennsylvania Business Corporation Law, 1011C, supra. The court reasoned that the word "entry" had been eliminated from this amendment, and that the elimination of this word which had appeared in that section prior to the 1968 Amendment made a difference in cases decided in Pennsylvania before and after the amendment. We do not agree with this reasoning. When considering the due process clause of the Fourteenth Amendment to the United States Constitution, Federal decisions have long dismissed the matter of "entry" as an important element in determining State jurisdiction over a foreign corporation. The requirement for State jurisdiction over foreign corporations is that the act or acts of the corporation have a substantial connection with the State of the forum: *Williams v. Connolly*, 227 F. Supp. 539 (1964); *Florio v. Powder Power Tool Co.*, 248 F. 2d 367; and *Kulicke v. Rollway Bearing Co., Inc.*, 131 F. Supp. 572 (1955).

The defendant's insertion of an advertisement in the JEWISH EXPONENT newspaper does not constitute an introduction of the defendant's business into the State: *Ballard & Ballard Co. v. Munson S. S. Line*, C.P.A. (Ky.) 25 F. 2d 252, Cert. den., 49 S. Ct. 17, 278 U.S. 611; nor does a continued practice of advertising, *Peoples Tobacco Company v. American Tobacco Company*, 246 U.S. 79, or sending a train of cars for the purpose of exhibition or advertisement, *Carpenter v. Westinghouse Air Brake*, 32 Fed. 434. In fact, in *Walker v. Savell*, 218 F. Supp. 348, the court found that the Associated Press was not doing business in Mississippi although it had an office in that state from which it released news.

It is our conclusion that the evidence in this case does not show that quality or quantity of contact, ties or relation to Pennsylvania as to justify this Commonwealth's jurisdiction over defendant hotel. Therefore, the service in this case was improper not only because Siegel was not defendant's agent but also because defendant was not doing business within the Commonwealth of Pennsylvania.

Judgment of the lower court is reversed.