378 A.2d 351

Steven GARFIELD, and Audrey Garfield, his wife

v.

HOMOWACK LODGE, INC., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 20, 1976.

Decided Oct. 6, 1977.

394

Joel Paul Fishbein, Philadelphia, for appellant.

Robert S. Dubin, Philadelphia, with him Morton B. Wapner, Philadelphia, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal was taken from an order of the trial court dismissing appellant's preliminary objections to the in personam jurisdiction of the court.[1] For the reasons that follow, we affirm.

Appellees filed a complaint in trespass against appellant, a non-registered foreign corporation, on January 13, 1975, alleging that Stephen Garfield was injured when he fell on a defectively maintained ice skating rink at appellant's resort in Spring Glen, New York. Service of the complaint was effected by registered mail to the Secretary of the Common-

1. The court has jurisdiction of this appeal by virtue of the Act of March 5, 1925, P.L. 23, No. 15, 12 P.S. § 672.

wealth and to the appellant in New York, whereupon appellant filed preliminary objections challenging jurisdiction.

The parties stipulated the following facts:

1. For each week during approximately the past five years, appellant has advertised its resort in The Jewish Exponent, a newspaper published and distributed in the Philadelphia area;

2. The cost of this advertising is $2,000.00 per year;

3. Appellant maintains a toll-free telephone number for Philadelphia area residents to make reservations with its lodge;

4. Appellant provides advertising brochures to several Philadelphia travel agents and pays a ten per cent referral fee for customers referred by a travel agency to the lodge.

The language of the Pennsylvania long-arm statute[2] clearly covers appellant's activities in this case. In § 8309(a)(1), the Act defines "doing business" for jurisdictional purposes as

"The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object."[3]

We think the stipulated facts that appellant continuously advertises its resort through a Pennsylvania newspaper, maintains a toll-free telephone number in Pennsylvania for lodge reservations, and retains Pennsylvania travel agents on a ten per cent commission basis demonstrate that appellant is doing a series of similar acts in this Commonwealth for the purpose of realizing pecuniary benefit, and therefore hold that sufficient contacts exist for *in personam* jurisdiction on the basis of the statutory language alone. However, additional reasons exist for a finding of sufficient contacts to trigger jurisdiction here.

In *Nettis v. DiLido Hotel*, 215 Pa.Super. 284, 257 A.2d 643 (1969), this Court held that service of process on a Philadel-

2. Act of November 14, 1972, P.L. 1063, No. 271, §§ 8301-8311, 42 Pa.C.S. § 8301-8311.

3. Act of November 15, 1972, supra, 42 Pa.C.S. § 8309(a)(1).

phia travel agent who booked reservations to defendant's Florida hotel on a ten per cent commission basis was an invalid effort to bring the defendant, a non-registered foreign corporation, within the jurisdiction of the court, because the travel agent was not an agent of defendant. In dictum, the Court stated that insertion in a Pennsylvania newspaper of an advertisement for the defendant's Florida hotel did not constitute an introduction of business into the Commonwealth so as to allow *in personam* jurisdiction over a non-registered foreign corporation.

■ *Nettis* is not dispositive of the issue in the present case because it was decided before the 1972 amendments to the Pennsylvania long-arm statute. Section 8309(b), added in 1972, provides:

"In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowable under the Constitution of the United States."[4]

The 1972 amendments to the Pennsylvania long-arm statute were designed to remove all Pennsylvania statutory and decisional impediments to the exercise of *in personam* jurisdiction over foreign corporations. *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 17, 323 A.2d 11 (1974). They were clearly intended to liberalize Pennsylvania's position.[5] By extending *in personam* jurisdiction to the full measure consistent with due process standards by § 8309(b), contacts sufficient to satisfy the constitutional due process requirements are now sufficient to satisfy the "doing business" requirement of Pennsylvania law. *Proctor & Schwartz*, supra 228 Pa.Super. at 17, 323 A.2d 11.

■ A three-pronged test exists to facilitate the ad hoc factual analysis this Court must make to determine whether

**4.** Act of November 15, 1972, supra, 42 Pa.C.S. § 8309(b).

**5.** Successive restrictive judicial construction of the long-arm statute by Pennsylvania courts led to legislative amendments broadening the scope of jurisdiction over foreign corporations. *See Parise v. AAA Warehouse Corp.*, 384 F.Supp. 1075, 1078 (W.D.Pa.1974).

the requisite contacts are present. First, the defendant must have purposely availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see Southern Mach. Co. v. Mohasco Indus., Inc.,* supra; *see also Parise v. AAA Warehouse Corp.,* supra.

 ■ We have no difficulty concluding in the first instance that the appellant purposely availed itself of the privilege of acting within this Commonwealth by its intensive and continuous advertising in a Pennsylvania newspaper, its maintenance of a toll-free telephone number in Pennsylvania for lodge reservations, and its arrangements with Pennsylvania travel agents on a ten per cent commission basis for referrals to its resort. For the same reasons, this intensive level of activity by appellant in Pennsylvania provides a substantial enough connection with the Commonwealth to make the exercise of jurisdiction over appellant fair and reasonable under the circumstances.

The dissent would not resolve these issues, however, reasoning that there is no evidence on record that the cause of action arose from appellant's activities in Pennsylvania. Nonetheless, our inquiry is not concluded for this reason, in light of the United States Supreme Court's statement in *International Shoe Co. v. Washington,* supra, that:

"There have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S. at 318–19, 66 S.Ct. at 159.

■ We hold here that the defendant's method of soliciting business in Pennsylvania consisted of such substantial and continuous activities in this Commonwealth as to render it amenable to *in personam* jurisdiction. The stipulated facts of the case dictate this result.

Rather than focusing solely upon whether the injured parties actually used the solicitation methods employed by Homowack Lodge, we will examine the intensity of appellant's activities in Pennsylvania and appellant's intent that Pennsylvania residents use its advertising and solicitation facilities. Homowack Lodge provided regular advertising, a toll-free telephone line, and Philadelphia travel agents for the obvious purpose of obtaining Pennsylvania customers for its New York resort. These activities control the jurisdictional determination rather than the actual use of appellant's advertising activities by plaintiffs.

Serious injuries have been alleged here by appellees, and this Commonwealth has a definite interest in resolving a suit brought by one of its residents. *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441 (E.D.Pa.1973); *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, supra. We have consequently concluded that appellees are not to be deprived of their forum for the sole reason that appellant does not have a registered office in Pennsylvania, in light of the intensive solicitation for profit appellant carries on in this Commonwealth.

For the foregoing reasons, the order of the trial court dismissing appellant's preliminary objections is affirmed.

HOFFMAN, J., files a dissenting opinion, in which VAN der VOORT and SPAETH, JJ., join.

HOFFMAN, Judge, dissenting:

Appellant, a foreign corporation not registered to do business in Pennsylvania, contends that the lower court erred in denying preliminary objections to the court's *in personam* jurisdiction. More specifically, appellant contends that his contacts with Pennsylvania were insufficient to permit *in personam* jurisdiction under the Pennsylvania "long-arm"

statute.[1]  I agree and would therefore, reverse the order of the lower court.

On January 29, 1973, appellee allegedly sustained an injury when he fell on an improperly maintained ice skating rink at appellant's resort in Spring Glen, New York.  On January 13, 1975, appellee filed a complaint in trespass.[2]  Appellee attempted to serve appellant by sending an attested copy of the service of process by registered mail to the Pennsylvania Department of State and by sending another copy to appellant in New York.[3]  On February 13, 1975 appellant filed preliminary objections raising a question of jurisdiction; appellant alleged that it was a foreign corporation not doing business in Pennsylvania and, therefore, not subject to *in personam* jurisdiction under the "long-arm" statute.

After interrogatories were filed and answered, the parties stipulated to the following facts.  Appellant is a foreign corporation with its only place of business in New York.  Appellant is not registered to do business in Pennsylvania.  During the five years prior to the date of the accident, appellant spent $2,000 per year to advertise its facilities each week in *The Jewish Exponent*, a newspaper published and distributed in the Philadelphia area.  Appellant also maintains a toll-free telephone number for Philadelphia area residents who desire to make reservations with appellant's lodge.  Finally, appellant provides brochures to several travel agents in Philadelphia, and pays these agents a ten percent commission for each customer referred to the lodge.  On April 26, 1976, the lower court entered an order denying appellant's preliminary objections.  This appeal followed.[4]

1. Act of Nov. 15, 1972, P.L. 1063, No. 271, §§ 8301 et seq. eff. Feb. 13, 1973;  42 Pa.C.S. §§ 8301 et seq.

2. Appellee also filed a complaint in a New York federal court, ostensibly to protect himself in the event Pennsylvania courts refused to exercise jurisdiction.

3. *See* Act of Nov. 15, 1972, supra;  42 Pa.C.S. § 8307.

4. An order ruling on a question of jurisdiction is appealable.  *See,* Pa.R.A.P. Rule 311;  42 Pa.C.S.  *See also* Act of March 5, 1925, P.L. 23, no. 15;  12 P.S. § 672.

According to 42 Pa.C.S. § 8302,[5] a foreign corporation "which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept . . . service of process in any action arising within this Commonwealth." 42 Pa.C.S. § 8309 [6] defines the acts which constitute "doing business" under the Pennsylvania "long-arm" statute:

"(a) General rule.—Any of the following shall constitute 'doing business' for the purposes of this chapter:

"(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

"(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

"(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

"(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

"(5) The ownership, use or possession of any real property situate within this Commonwealth.

"(b) Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

5. Act of Nov. 15, 1972, supra; 42 Pa.C.S. § 8302.

6. Act of Nov. 15, 1972, supra; 42 Pa.C.S. § 8309.

Section 8309(b) has made the "long-arm reach" of the Pennsylvania statute co-extensive with the "long-arm reach" permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974);[7] cf. *Kitzinger v. Gimbel Brothers, Inc. v. Textile Alliance, Ltd.*, 240 Pa.Super. 345, 368 A.2d 333 (1976). Accordingly, I will consider whether appellant has sufficient contacts with Pennsylvania to make it constitutionally amenable to service of process in this state.[8]

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 158 (1945), provides the classic test for determining whether a court can constitutionally exercise *in personam* jurisdiction over a foreign, non-registered corporation: ". . . due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " However, in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the Supreme Court stated that, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws."

Our Court has noted that "these decisions provide only a framework under the broad formula of 'fair play and substantial justice' and a determination of whether or not the 'minimum contacts' of a foreign corporation with a particular state are sufficient to make the corporation constitution-

---

7. *Proctor & Schwartz v. Cleveland Lumber Co.*, supra, provides a detailed exposition of the evolution of the Pennsylvania "long-arm" statute.

8. Appellee does not contend that either 42 Pa.C.S. § 8309(a)(1) or (a)(2) confers *in personam* jurisdiction over appellant. Because I conclude that federal due process, incorporated by 42 Pa.C.S. § 8309(b), does not permit *in personam* jurisdiction on the facts of this case, I do not decide whether these other subsections apply.

ally amenable to process in that state must inevitably be made on an ad hoc case-by-case basis and not by the application of a mechanical rule. *Campbell v. Triangle Corp.*, 336 F.Supp. 1002 (E.D.Pa.1972)." *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, supra, 228 Pa.Super. at 18, 323 A.2d at 15. *See also Kitzinger v. Gimbel Brothers, Inc. v. Textile Alliance Ltd.*, supra; *Action Industries, Inc. v. Wiedeman*, 236 Pa.Super. 447, 346 A.2d 798 (1975). However, we have developed certain guidelines for determining whether "minimum contacts" are present in a given case. "First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, supra. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington*, supra; *see Southern Mach. Co. v. Mohasco Indus., Inc.*, supra; *see also In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.*, 313 F.2d 769 (9th Cir. 1963)." *Proctor & Schwartz*, supra, 228 Pa.Super. at 19, 323 A.2d at 15; accord *Kitzinger v. Gimbel Brothers, Inc. v. Textile Alliance Ltd.*, supra; *Action Industries*, supra. *See also Trachtman v. T.M.S. Realty and Financial Services*, 393 F.Supp. 1342 (E.D.Pa.1975).

The second test requires that the cause of action arise from the defendant-corporation's activities within the forum state. In the instant case, the record shows that appellant advertised in a Philadelphia newspaper, that it had arrangements with Philadelphia travel agents, and that it maintained a toll-free telephone number for Philadelphia area residents to make reservations. However, the record gives no indication whatsoever that appellee read the newspaper ads, booked reservations through a Philadelphia travel agen-

cy, or used the toll-free telephone number to secure accommodations. In short, there is no factual basis supporting a contention that the cause of action arose from appellant's activities within Pennsylvania.[9]

Despite appellee's failure to establish that his cause of action arose from appellant's activities within Pennsylvania, my inquiry into the constitutional boundaries of due process is not terminated. In *International Shoe Co. v. Washington,* supra, 326 U.S. at 318–19, 66 S.Ct. at 159, the Supreme Court noted that: ". . . there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." See also *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974); *Restatement, Conflict of Laws,* 2nd, § 47. Thus, I must determine whether appellant's activities in Pennsylvania were of a substantial and continuous nature.

In *Perkins v. Benguet Consolidated Mining Co.,* supra, plaintiff brought suit in an Ohio court against a foreign mining corporation seeking dividend payments and damages because the corporation failed to issue 120,000 shares of stock due to him. The corporation mined properties in the Philippine Islands. During World War II, the company's operations there were completely halted by the occupation of the islands by the Japanese. The president of the company, who was also the general manager and principal sharehold-

---

**9.** Because of this application of the second test, I do not decide whether the activities in this case would satisfy the first and third tests enunciated in *Proctor & Schwartz v. Cleveland Lumber Co.* Nor do I intimate any opinion as to whether injuries sustained in an ice skating accident in New York can be said to arise from advertisements in Pennsylvania newspapers read and relied upon by a plaintiff. These are troublesome issues; courts have split over their proper resolution. Compare *Mulhern v. Holland America Cruises,* 393 F.Supp. 1298 (D.N.H.1975); with *Schaffer v. Granit Hotel, Inc.,* 110 N.J.Super. 1, 264 A.2d 240 (1975). See also *Scheidt v. Young,* 389 F.2d 58 (3rd Cir. 1968); *Shern v. Tractor Supply Co. of Grand Forks,* 381 F.Supp. 1331 (D.N.D.1974); *Safari Outfitters, Inc. v. Superior Ct.,* 167 Colo. 456, 448 P.2d 783 (1969).

er, returned to his home in Ohio. There he discharged his duties as general manager and president by maintaining a continuous and systematic supervision of the limited wartime activities of his company. For example, he held directors' meetings at his home, he carried on company correspondence, he maintained two bank accounts for company funds, and he distributed salary payments and funds to cover purchases of machinery. The plaintiff served the president-general manager in Ohio while performing these duties. The Supreme Court held that these activities were substantial and continuous enough to permit Ohio courts to assert *in personam* jurisdiction over the foreign corporation.

In *Bork v. Mills*, supra, plaintiff collided in Virginia with a truck owned by defendant, a freight hauler. Plaintiff filed a complaint in the Court of Common Pleas of Philadelphia, and attempted to secure jurisdiction over defendant under the "long-arm" statute. Plaintiff made an uncontroverted allegation that the defendant had hauled freight for hire within various Pennsylvania counties. The Supreme Court note that such an allegation sufficed to invoke the "long-arm" statute so as to permit the action to be instituted by service upon the Secretary of the Commonwealth. However, the Court held that: ". . . since [the] complaint makes clear that their cause of action occurred in Virginia and did not arise out of any business which Mills does within the Commonwealth, appellants must also allege that Mills' freight hauling activities are continuous and substantial enough to permit the court of Pennsylvania to exercise jurisdiction over him with respect to an unrelated cause of action." 458 Pa. at 231, 329 A.2d at 249.[10] The uncontroverted allegation of hauling freight for hire within various Pennsylvania counties did not satisfy this test.

Finally, our Court in *Nettis v. DiLido Hotel*, 215 Pa.Super. 284, 257 A.2d 643 (1969), confronted a factual situation almost identical to the one presently before us. Plaintiff's

---

**10.** While *Bork v. Mills*, supra, concerns an individual defendant, *Perkins v. Benguet Consolidated Mining Co.*, supra, makes clear that the same rule applies to corporations as well. *See also Restatement, Conflict of Laws*, 2d, § 47.

wife was injured while staying at defendant-hotel in Miami, Florida. She sued in the Court of Common Pleas of Philadelphia and attempted to make service of process by handing a copy of the complaint to a Philadelphia travel agent, one Robert Siegel. Plaintiff maintained that Siegel was an agent of the DiLido Hotel. The DiLido Hotel advertised in *The Jewish Exponent.* The advertisement contained Siegel's telephone number, but not his name. If Siegel arranged for a person to stay at the DiLido Hotel, he received a ten percent commission on that person's food and hotel bill. Siegel, however, had no power to bind the DiLido Hotel nor was he subject to any control by the hotel. Siegel did not make the arrangements for the stay of plaintiff's wife at defendant-hotel.

Our Court held that service made upon Siegel could not bind the DiLido Hotel because he was not its "agent". Pa.R.C.P. § 2180(a)(2); 12 P.S. § 2180. See also *Miller v. Kiamesha-Concord, Inc.,* 420 Pa. 604, 218 A.2d 309 (1966). However, we also stated, in *dictum,* that the DiLido Hotel was not "doing business" in Pennsylvania; we reached this conclusion on the basis of the due process clause of the Fourteenth Amendment of the federal constitution. "In the instant case, no substantial contact or ties to the State of Pennsylvania were established. Defendant has no branch offices in Pennsylvania, nor does it own, lease, maintain or otherwise control any office, property or assets within the Commonwealth. It has no paid employees operating exclusively in its behalf in Pennsylvania. There is a lack of evidence of that quantity and quality of business sufficient to hold the defendant as doing business within the Commonwealth." Supra 215 Pa.Super. at 295–96, 257 A.2d at 649.[11]

I do not now decide whether the *dictum* on due process contained in *Nettis* should be approved or disapproved. *Nettis* involved the application of the "minimum contacts" test

11. In the case at bar, it is likewise true that appellant has no branch offices in Pennsylvania nor does it own, lease, maintain, or otherwise control any office, property, or assets within the Commonwealth. Appellant has no paid employees operating exclusively in Pennsylvania.

to a very close factual situation; we are now applying a much more stringent test requiring a showing of "substantial and continuous business" within Pennsylvania when a foreign corporation is sued on a cause of action unrelated to its activities here. However, our discussion in Nettis as to whether the defendant's activities constituted "minimum contacts" makes it very clear that the DiLido Hotel did not carry on "substantial and continuous" business within Pennsylvania. The activities in the case at bar do not vary in any significant way from those in *Nettis*. Moreover, they do not approach the extensive range of activities carried on in the forum state by corporate officials in *Perkins v. Benguet Consolidated Mining Co.*, supra. Accordingly, I would hold that appellant does not conduct the "substantial and continuous" business in Pennsylvania necessary to permit *in personam* jurisdiction over a foreign corporation when a cause of action unrelated to its activities here is involved. Appellee's complaint should be dismissed.

VAN der VOORT and SPAETH, JJ., join in this dissenting opinion.