## Thomas v. Clark

*Stephen Feldman*, for plaintiffs.
*Brian O'Neil*, for defendants.

BULLOCK, *J.*, October 26, 1978—Plaintiff, Wilmer C. Thomas, of Philadelphia, Pa., was involved in an accident on September 19, 1974, in New Jersey when the vehicle he was driving was

struck in the rear by another vehicle driven by a New Jersey resident.

On September 20, 1974, plaintiff retained Herbert Yaskin, Esq., who is licensed to practice law in Pennsylvania, to represent him in the prosecution of all claims arising out of the September 19, 1974, accident. Plaintiff signed a contingent fee agreement with Mr. Yaskin in Mr. Yaskin's office.

Mr. Yaskin, by telephone and letter dated January 22, 1975, contacted the law firm of Leibowitz, Krafte & Leibowitz of Englewood, N.J. (about 100 miles from Philadelphia), defendants in this action, to prosecute plaintiff's claim in the New Jersey courts. Mr. Yaskin is not a member of the New Jersey bar, nor are the New Jersey attorneys members of the Pennsylvania bar. Defendants accepted plaintiff's case and agreed to pay a one-third referral fee to Mr. Yaskin. Defendants contacted Mr. Yaskin on February 7, 1977, to have plaintiff sign a retainer agreement with them which would be acceptable in the New Jersey courts. On several occasions thereafter, defendants requested Mr. Yaskin to confer with plaintiff and to report to them or to obtain medical reports regarding plaintiff and forward them. Mr. Yaskin complied. At no time did any of the New Jersey attorneys come to Pennsylvania in connection with the case.

On March 7, 1977, plaintiff's case was called for trial in New Jersey and was settled the same day for the sum of $4,500. Plaintiff signed releases in defendants' office but asked them to hold the releases until he talked with Mr. Yaskin. After plaintiff conferred with Mr. Yaskin, Mr. Yaskin sent explicit instructions to defendants not to forward the release to defendants in the personal injury action. These defendants then moved the New Jersey

Superior Court to specifically enforce the settlement. After a full hearing at which plaintiff, Joseph A. Clark, Jr., Esq. and Robert D. Curran, Esq., attorney for defendants in that case, testified, the court issued an opinion approving the settlement, and entered an order enforcing it.

The present action is a legal malpractice suit by plaintiff against the New Jersey attorneys alleging mishandling and improper settlement of plaintiff's personal injury action. Service of process was made pursuant to the provisions of Pennsylvania Long Arm Statute of November 15, 1972, P.L. 1063, secs. 8301 et seq., 42 Pa.C.S.A. §8301 et seq. Defendants have filed preliminary objections to which plaintiff filed an answer. Thereupon the depositions of plaintiff, Herbert Yaskin, Esq., and Joseph A. Clark, Jr., Esq., were taken. There was no controversy as to the facts we have set forth; the preliminary objections, however, raise a legal issue as to their proper interpretation.

Defendants contend first that this court has no personal jurisdiction over them. The facts upon which the parties rely, pro and con, on this issue are contained in the depositions of plaintiff, Herbert Yaskin, Esq., and Joseph A. Clark, Jr., Esq. Plaintiff, at oral argument, conceded that "the conduct" which warranted service of defendants pursuant to the Long Arm Statute, supra, was that involved in the handling of plaintiff's New Jersey action. They point specifically to the facts that: (1) Defendants signed and sent a power of attorney to referring counsel; this power of attorney constituting an agreement, was signed by plaintiff in his Philadelphia lawyer's office. (2) Defendants requested Philadelphia counsel to confer with plaintiff and forward information, which was done several

times. (3) Defendants had Philadelphia counsel obtain medical reports from Philadelphia physicians and forwarded them to defendants in New Jersey. Plaintiff contends that Philadelphia counsel was acting as agent for defendants and that the legal situation is the same as if defendants themselves had come into Philadelphia and had done the acts referred to.

It is clear from Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa. Superior Ct. 12, 323 A. 2d 11 (1974), that the Pennsylvania Long Arm Statute is intended to give Pennsylvania courts as wide a jurisdiction over foreign parties as the United States Constitution allows. The Constitutional test is described in Proctor & Schwartz as follows p. 19:

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. [Citation omitted.] Secondly, the cause of action must arise from defendant's activities within the forum state. [Citations omitted.] Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable."

In the present case, we do not believe defendants have availed themselves of the privilege of acting within the forum, thus invoking the benefits and protections of its laws. Physically, defendants have never actually been present in Pennsylvania in connection with this case. A Philadelphia lawyer was co-counsel, taking whatever action had to be taken in Pennsylvania. The fact that by mail defendants entered into agreements with co-counsel and with the client we do not regard as determina-

tive under the circumstances, the contracts not requiring that any action be taken by them in Pennsylvania. It follows from what we have said that we do not believe defendants conducted any activities within Pennsylvania. Similarly, we do not consider that defendants had a substantial connection with Pennsylvania. We note that although Philadelphia's proximity to New Jersey is such that it might not be considered an unreasonable distance for defendants to travel, plaintiff's theory would apply just as well to a Pennsylvanian's accident in California, where a California lawyer never set foot outside California, but was invited into the case by Pennsylvania counsel and communicated with the client through Pennsylvania counsel. In both the California situation and the present situation, the foreign attorney really has no contacts with Pennsylvania other than those required by representation of a Pennsylvania resident in a non-Pennsylvania cause of action, with a Pennsylvania attorney as co-counsel. There is here no advertisement or solicitation in Pennsylvania encouraging Pennsylvanians to patronize out-of-state business, as in Garfield v. Homowack Lodge, Inc., 249 Pa. Superior Ct. 392, 378 A. 2d 351 (1977). There is no ordering of goods to be manufactured in Pennsylvania, as in Proctor & Schwartz, supra. There is no sale of a Pennsylvania business as in Schreiber & Weiss v. Ochroch and Wolfe, Add. Deft., 1 P.C.R. 160. There was no forwarding into Pennsylvania of an allegedly defective product, as in Deere v. Zilber, 234 Pa. Superior Ct. 273, 338 A. 2d 615 (1975).

The present case is factually more similar to Gelineau v. New York University Hospital, 375 F. Supp. 661 (D.N.J. 1974). In that case a New

Jersey couple sued in the New Jersey Federal court (alleging diversity of citizenship) a New York hospital and two blood plasma services, charging medical malpractice. Service on defendants was made in accordance with the New Jersey Long Arm Statute. Defendant's motion to quash service and to dismiss for lack of in personam jurisdiction was granted. In commenting on the facts, the court stated pp. 668-9:

"Here, as we have found, New York University Hospital has not purposefully availed itself of the privileges of conducting activities within the forum state. The medical services that it provided to the plaintiff were performed in New York at the request of the plaintiff who unilaterally traveled to New York to receive them. The residence of the plaintiff herein was, and is now irrelevant to the services provided by this defendant at its location.

"The Courts of New Jersey therefore cannot, consistent with due process and fundamental fairness, exercise 'in personam' jurisdiction over New York University Hospital predicated on the manner in which services were performed by it in New York, and cannot require New York University Hospital to appear to defend or default here."

In Gelineau, a New Jersey physician had referred plaintiffs to the New York hospital. The present case is factually even stronger in defendants' favor than Gelineau since here the basic incident that set the whole chain in motion was an out-of-state incident, a New Jersey accident. Mr. Gelineau's aneurism was hardly an out-of-state event; at the very least, it was geographically neutral.

We believe that the fact that the practice of law is the "business" involved herein has special signifi-

cance. It is conceded that defendants are not licensed to practise law in Pennsylvania. Insofar as the handling of plaintiff's negligence case involved practising law, defendants acted solely and exclusively within New Jersey. It is some ancillary activity, not in and of itself practising law, upon which plaintiff relies. He has argued that with respect to these acts, Philadelphia counsel was a "puppet" and agent of defendants. This contention, it seems to us, ignores completely the basic scheme, whereby Pennsylvania lawyers practise in Pennsylvania and New Jersey lawyers practise in New Jersey. Although Mr. Yaskin was presumably plaintiff's preferred lawyer, he could not have gone into New Jersey to represent plaintiff. When he put plaintiff in touch with defendants, it seems to us that implicit in the whole arrangement was that plaintiff's case would be geographically divided with defendants confining themselves to conduct in New Jersey. We do not believe that forwarding counsel was simply a puppet, an agent of defendants without any discretion. On the contrary, we regard the Philadelphia and New Jersey counsel herein as co-counsel. The former was to be paid one-third of the total counsel fee as a forwarding counsel, not as an errand boy. We do not believe we need consider what the result would be, if defendants had sent their own hirelings into Philadelphia to sign up plaintiff, to interview plaintiff and collect medical records regarding plaintiff and no Philadelphia attorney had been involved. To us, that is a significantly different factual situation from this case.

The only other case involving lawyers which has been brought to our attention is Schreiber & Weiss

v. Ochroch and Wolfe, supra, decided by Honorable Edward Bradley of this court. That case involved an action in Pennsylvania by a Pennsylvania resident against a Pennsylvania attorney. Plaintiff had previously sold a Pennsylvania business to a New Yorker. Thereafter, plaintiff had sued the New York party in Pennsylvania in connection with the contract of sale. The New York party countered by filing suit in New York. Plaintiff's Pennsylvania attorney engaged a New York attorney, who permitted a default judgment to be entered in New York. Plaintiff then sued his Pennsylvania attorney and the question before Judge Bradley was whether the New York attorney could be joined as an additional defendant under the Long Arm Statute. Judge Bradley ruled in the affirmative on the ground that the additional defendant must have anticipated that his failure to protect plaintiff's interests would have substantial consequences in Pennsylvania. We believe, however, that Schreiber & Weiss is distinguishable from the present case. There the original transaction was the sale of a Pennsylvania business; here the original transaction was a New Jersey accident. There the initial litigation was in Pennsylvania; the New York action was a response to the Pennsylvania action. There the court already had jurisdiction over the two original Pennsylvania parties and the joinder of the New York additional defendant was necessary to resolve the dispute. In the present case, we must determine whether the Pennsylvania court may or should undertake jurisdiction ab initio. Finally, in Schreiber, the legal malpractice issue had not been reviewed by any court. Here, the propriety of the challenged settlement has already been reviewed by a New Jersey

court at a hearing at which plaintiff was presented and testified. The approval of the settlement by the New Jersey court was not appealed by plaintiff.

Defendants' second preliminary objection is a request that the court apply the doctrine of forum non conveniens. The doctrine presupposes the existence of jurisdiction of a court over the parties and subject matter of an action, but declares that because of inconvenience to parties or witnesses, the interests of justice and the availability of a more convenient forum, the court should not exercise its jurisdiction. In the present case, obviously New Jersey is an alternative forum. In our view, even if we considered that we had jurisdiction in this case, we do not believe it would be appropriate to exercise it. Although we do not believe that serious inconvenience would result to anyone regardless of whether the case were heard in Philadelphia or New Jersey, we believe that comity requires us to leave this dispute to the New Jersey courts. (Plaintiff argues that his principal medical witnesses are in Pennsylvania. We would question whether such witnesses would be required in the legal malpractice action. Presumably, the conduct of defendants would have to be judged on the basis of what information they had, not on the basis of the full medical facts.) In our view, historically the various state judicial systems within this country, where there is a vast amount of interstate activity, have functioned side by side with a minimum of friction. The reason has been "comity," a principle whereby courts have respected the appropriate spheres of the judiciary of other states, not as a matter of obligation, but as a matter of deference and respect. This is a case in which the conduct of New Jersey lawyers acting with respect to a New Jersey case is

at issue. It is, moreover, conduct in which already at least two New Jersey judges have made decisions relevant to the propriety of defendants' conduct. One judge held a settlement conference and recommended a certain settlement. Another judge, after a hearing at which plaintiff appeared and testified, approved the settlement. Plaintiff did not appeal the order of the New Jersey court affirming the settlement, but chose instead to file the present action. This conduct, we believe, has about it a suggestion of forum-shopping. Plaintiff is, in essence, placing a Pennsylvania court in the position of at least indirectly reviewing the action of a New Jersey court. We do not believe that we should accept this position. We are not unaware that Pennsylvania has an interest in the financial welfare of its citizens. We do not, however, believe that plaintiff's interests would be any better served by this court than by a New Jersey court under the circumstances. We would certainly not automatically favor the interests of a Pennsylvania citizen over those of a New Jersey citizen, nor would we expect a New Jersey court to do the opposite.

Thus, although we question whether the doctrine of forum non conveniens is appropriately applicable to this case, we do believe that comity warrants our declining jurisdiction, assuming arguendo that we have it.

## ORDER

And now, October 26, 1978, defendants' preliminary objections are sustained, in accordance with the foregoing opinion. Plaintiff's complaint herein is dismissed.